OPINION
These consolidated appeals originate from the Court of Common Pleas, Juvenile Division, of Van Wert County, Ohio, wherein that court adjudicated the appellant a delinquent.
On August 19, 1996, the Court of Common Pleas, Juvenile Division, of Van Wert County, Ohio, held a hearing to determine whether the appellant, Jonathan Slusher (hereinafter "Jon"), should be adjudicated a delinquent. At that time, Jon was in the temporary custody of the Department of Human Services (hereinafter "DHS") as part of a previous dependency action. The delinquency hearing was based, in part, upon a complaint that was filed against Jon on July 15, 1996, alleging that he committed an act on or about June 1, 1995, that would constitute a criminal count of forcible rape if committed by an adult.[1] In addition to the forcible rape complaint, another complaint was filed against Jon on August 16, 1996, three days prior to the hearing, which alleged that Jon committed acts against two different victims during the summer of 1995 that would constitute two criminal counts of statutory rape if committed by an adult.
Present during this hearing was attorney Perry Wise, who was appointed Jon's guardian ad litem during the dependency action, whereby DHS had temporary custody of Jon. At the delinquency hearing, the trial court had the following discussion with Jon and Mr. Wise:
 Court: Now, Mr. Wise is here to represent you concurrently as guardian and attorney. You do have a right to have an attorney, to have one appointed to represent you and currently Mr. Wise is appointed to represent you. Now I've also informed Mr. Wise that if he finds a conflict between his position as attorney and conflict as guardian ad litem he is to notify this court and you could have a separate attorney. A but, Mr. Wise are you asking for a separate counsel at this time?
 Atty. Wise: No, I have no conflict.
 Court: Alright. Also Jonathan, you have the right to * * * and further I would recommend to you that you consult with Mr. Wise before you make any statements.
Thereafter, Mr. Wise represented to the court that Jon would be admitting to the truth of the allegations. Jon then admitted committing the acts alleged in both complaints, and the court adjudicated him a delinquent. The court then imposed a commitment to the Department of Youth Services (hereinafter "DYS"), suspending that time and placing him on probation under the standard Rules and Conditions of Van Wert County Juvenile Court until he completed the C.A.R.E. program. In addition, the court ordered that Jon continue his medication and comply with the rules of his foster home. This decision was later reflected by way of a judgment entry filed on that same date.
On May 12, 1997, a complaint was filed in the juvenile court, which alleged that Jon violated his probation by not submitting to the reasonable control, supervision, or discipline of his caretaker(s) at St. Joseph Orphanage/Altercrest Intensive Treatment Program on several occasions from October 10, 1996 until the filing of this complaint. Jon appeared before the juvenile court for an initial hearing on this complaint and shelter care on May 13, 1997. Present at this hearing was Mr. Wise. At that time, the court had the following discussion with Jon and Mr. Wise:
 Court: You do have the right to have an attorney and to have an attorney appointed for you if you want one, and due to the fact that you're in a long term foster care you'd have the right to have an attorney. Mr. Wise is your Guardian ad Litem, he is an attorney but he is not your personal attorney alright, and his opinion may conflict with yours so you have the right to have your own attorney. Do you understand that right?
 Jon: Yes.
 Court: Do you want an attorney? Mr. Wise do you think he should have his own attorney?
 Atty. Wise: I think he should have an attorney.
 Court: Due to the history of this case, the seriousness of the potential penalties and the fact that he's in a long term foster care at the Department of Human Services, I would concur and I will order that an attorney be appointed to represent Jonathan.
The court then entered a denial to the probation violation allegation and later appointed attorney Martin Burchfield to represent Jon on this complaint. On June 18, 1997, Jon appeared before the court with Mr. Burchfield and admitted to the allegation that he violated the terms of his probation as alleged in the May 12, 1997 complaint. Mr. Wise also appeared at this hearing in his guardian ad litem capacity. The court accepted Jon's admission and re-imposed his commitment to DYS but stayed this commitment based on the condition that Jon successfully complete the treatment program at the Juvenile Residential Center of Northwest Ohio. The court also ordered that Jon remain on probation after his release from the residential center and that all other court orders in Jon's previous cases be continued during this time. The court then formalized its determination at the hearing in its June 19, 1997 judgment entry.
Subsequently, another complaint was filed against Jon on August 26, 1997. This complaint alleged that Jon failed to comply with the rules of the Juvenile Residential Center of Northwest Ohio on July 12, 1997, and July 14, 1997, thus violating the terms of his probation. On August 26, 1997, the juvenile court conducted a shelter care hearing in order to determine where Jon was going to be placed next because the Juvenile Residential Center would not keep him any longer. At that time, the court informed Jon that the purpose of the hearing was mainly to determine placement but that it was also to inform Jon of the allegations of the August 26, 1997 complaint. The court then told Jon the following: "Alright. You do have the right to have an attorney, to have an attorney appointed to represent you, Mr. Wise again is your Guardian al (sic) Litem, not necessarily representing you as an attorney." Mr. Wise, once again present at this hearing, then informed the court that he did not see any conflict for the purposes of the shelter care hearing.
On October 7, 1997, the trial court held a hearing based upon the allegations contained in the August 26, 1997 complaint. Jon appeared at this hearing, represented by Mr. Burchfield. Mr. Wise also attended the hearing in his guardian ad litem capacity. When stating who was present at the hearing for the record, the trial court noted that it has "appointed Mr. Burchfield to represent the child due to the type of charges filed, other issues involved in this case, competency issues and so forth." At this hearing, Jon admitted to the truth of the allegations contained in the complaint. The court accepted Jon's admission and proceeded to disposition. As reflected in its October 7, 1997, judgment entry, the court then ordered the previously suspended commitments to DYS be revoked and that Jon be committed to the legal custody of DYS for a minimum of one year to a maximum time not to exceed Jon's attainment of the age of twenty-one years.
These appeals followed, and counsel for Jon now asserts two assignments of error.
 THE TRIAL COURT VIOLATED JONATHAN SLUSHER'S RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION, R.C. 2151.352, AND JUV.R.4.
 JONATHAN SLUSHER WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTIONS TEN AND SIXTEEN, OF THE OHIO CONSTITUTION, R.C. 2151.352 AND JUV.R.4 (A), AND 29(B) BY THE REPRESENTATION PROVIDED BY HIS GUARDIAN AD LITEM.
As these assignments of error involve related issues, they will be addressed together.
Our review of these assignments of error begins by noting the circumstances surrounding the three allegations of rape filed against Jon. The record reveals that on May 29, 1996, the Mercer County Sheriff's Office interviewed the victim of the forcible rape alleged in the first complaint filed against Jon. The victim, age twelve at the time of the interview, stated that while staying the night with Jon's foster family at the time, Jon told him that he would beat him up if he did not take off his clothes. The victim did as he was told, and Jon began fondling his penis. The victim then stated that Jon stopped when Becky, Jon's foster mother at the time, walked into the room. According to the victim, Becky then called his mother who came and took him home. During this interview, the victim specifically stated that no oral or anal sex occurred between Jon and himself. This incident reportedly occurred on or about June 1, 1995, nearly one full year prior to the investigation.
In addition, the Mercer County Sheriff's Office interviewed Jon at his new foster home on June 14, 1996. Jon's foster mother told the investigating officers that Steve Morrison, Jon's counselor, told Jon that he was to tell the officers the whole story. During this interview, Jon was told that he was not going to jail that day, that they merely wanted to get his side of the story, and that they would decide later whether to file charges and what to do with him. The officer then spoke with Jon in private. Jon confirmed the version of events given by the victim but also stated that he grabbed the boy, held him face down on the bed, and placed his erect penis inside the boy's buttocks for approximately two minutes.
While the written report of this interview states that the Mercer County Sheriff's Office received a call concerning these allegations, the report and the remainder of the record in this case does not reveal who made that call. Current counsel for Jon maintains that these allegations arose from the communications between Jon and his counselor, Steve Morrison, which counseling was recommended by Mr. Wise as guardian ad litem during the dependency action. On the contrary, the State maintains that these allegations were first reported by the mother of the twelve-year old boy who was the victim of the forcible rape alleged in the first complaint filed against Jon.
On August 16, 1996, the second delinquency complaint against Jon, alleging acts by Jon against his two sisters that would constitute two additional counts of rape if committed by an adult, was filed. The record as to this complaint reveals that the Van Wert Police Department received the results of an investigation conducted by Sandra Honigford of DHS, which prompted the filing of the complaint. Included in the packet of information filed in conjunction with the complaint were two letters from Steve Morrison, which stated that Jon had admitted during several counseling sessions over the past months that he sexually molested his two younger sisters repeatedly from 1993 through 1995. These letters were dated August 13, 1996, and August 16, 1996, respectively. Additionally, there were transcripts of the interviews with Jon's two sisters contained in this packet of information. These interviews were both conducted on August 2, 1996, through leading questions posed to the girls individually by Ms. Honigford. Both girls initially denied any wrongdoing by Jon but later, after being told by Ms. Honigford that she thought one was lying and the other was being uncooperative, each girl indicated through diagrams where Jon touched them. In addition, the packet contained a hand-written statement, purportedly written by Jon and given to someone named Dorothy at a meeting on July 30, 1996. The writing stated that he put his penis in her vagina, kissed her breasts, and named one of the sisters as having performed oral sex on him. One of the girls confirmed that Jon's written statement was true when Ms. Honigford told her about it. On August 19, 1996, the delinquency hearing for all three counts of rape was held. Once again, how the investigation was begun is unclear from the record.
The Revised Code provides that "[a] child * * * is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152. of the Revised Code[.]" R.C. 2151.352. In addition, the Ohio Supreme Court has recognized that a juvenile has the right to the assistance of counsel in juvenile court proceedings involving criminal aspects. In re Anderson (2001), 92 Ohio St.3d 63, 66
(citing In re Gault (1967), 387 U.S. 1, 31-57). Moreover, the Rules of Juvenile Procedure provide that "[e]very party shall have the right to be represented by counsel[.]" Juv.R. 4(A). The Rules of Juvenile Procedure also allow a person who is a licensed attorney in the State of Ohio and is serving as guardian ad litem for a child to "serve as counsel to the ward providing no conflict between the roles exist[s]." Juv. R. 4(C).
In the case sub judice, Perry Wise, an attorney licensed in the State of Ohio, was appointed Jon's guardian ad litem in an earlier dependency action. At the August 19, 1996 delinquency hearing, Mr. Wise was present in his guardian ad litem capacity. However, the juvenile court informed Jon that Mr. Wise was there "concurrently as guardian and attorney" for him. Thus, it appears that the court provided the required representation for Jon at this hearing through its authority under Juvenile Rule 4(C).
However, our inquiry into whether Jon had representation does not end there. In addition to the right to counsel in a juvenile proceeding involving criminal aspects, the Ohio Supreme Court has determined that "[w]here there is a right to counsel, the Sixth Amendment to the United States Constitution also guarantees that representation will be free from conflicts of interest." State v. Dillon (1995), 74 Ohio St.3d 166, 167
(citing State v. Gillard (1992), 64 Ohio St.3d 304, 312). Thus, when an attorney/guardian ad litem is appointed, these two roles must not conflict. See Juv.R. 4(A), (C). The wording of the juvenile rules reflect that the role of an attorney and a guardian ad litem may not always conflict. However, the rules also recognize, as does the Ohio Supreme Court, that there will be instances where the guardian ad litem's duty to determine the best interest of the child and the attorney's duty to zealously represent his/her client within the bounds of the law will be in conflict. See In re Baby Girl Baxter (1985), 17 Ohio St.3d 229,232.
In In re Baby Girl Baxter, a mentally handicapped mother of an infant was appointed a guardian ad litem, who also served as her attorney during proceedings involving permanent custody of the infant. Id. 230-231. In his position as guardian ad litem, the attorney determined that having permanent custody of the child was not in the mother's best interest.Id. at 232. However, in his position as attorney, his client's wishes were that she not be deprived of permanent custody of her child. Id. In determining that the attorney/guardian ad litem had conflicting interests, the Court held that "when an attorney is appointed to represent a person and is also appointed guardian ad litem for that person, his first and highest duty is to zealously represent his client within the bounds of the law and to champion his client's cause." Id.
The Ohio Supreme Court has also held that
 [w]here a trial court knows or reasonably should know of an attorney's possible conflict of interest in the representation of a person charged with a crime, the trial court has an affirmative duty to inquire whether a conflict of interest actually exists. The duty to inquire arises not only from the general principles of fundamental fairness, but from the principle that where there is a right to counsel, there is a correlative right to representation free from conflicts of interest.
 Gilliard, 64 Ohio St.3d at syllabus. Although Gilliard involved the representation of co-defendants by the same attorney, we find this rule of law equally applicable to the case presently before this Court. While the case sub judice involves an adjudication of delinquency, the allegations against Jon were extremely serious and if committed by an adult, would constitute three first degree felonies. Thus, the general principles of fundamental fairness require that Jon be afforded this same level of protection.
At the delinquency hearing, the trial court specifically mentioned the seriousness of these offenses. In addition, the court informed Jon that if an adult had done these acts, he/she would be in prison. During the initial hearing for the first alleged probation violation, the trial court once again noted the seriousness of the potential penalties against Jon. In fact, the trial court found that at that point, the seriousness of the potential penalties warranted counsel separate from the dual role of Mr. Wise as guardian ad litem and attorney for Jon. Moreover, at the hearing for the second alleged probation violation, the trial court stated that it appointed Mr. Burchfield as counsel for Jon because of the type of charges filed, inter alia.
These statements illustrate that the trial court knew that there was a potential conflict of interest in Mr. Wise's role as guardian ad litem and as counsel for Jon at the hearings for the probation violations. These same factors were present during the delinquency proceeding and the court, through its own statements, acknowledged the seriousness and potential ramifications of the allegations against Jon. Thus, the court should have known of a possible conflict of interest at the delinquency hearing. Therefore, the court had an affirmative duty to inquire whether a conflict of interest actually existed at that hearing. This duty involves more than merely asking Mr. Wise whether he had a conflict. Rather, the trial court should have considered the nature of the allegations against Jon, how these allegations were discovered, and the respective duties of Mr. Wise as counsel and as guardian ad litem.
The allegations against Jon at the delinquency hearing were very serious, as were the potential penalties, i.e. commitment to DYS for a minimum of one year and possibly until he reached age twenty-one in approximately nine years. Likewise, how these allegations were discovered is questionable. While the State maintains that the Mercer County rape investigation was initiated by the victim's mother, according to counsel for Jon, his court-ordered counseling sessions in the dependency action led to all three rape investigations. Although the record of the dependency action is not currently before this Court, logic would seem to indicate that a guardian ad litem, in determining a child's best interest, would recommend counseling when a child is taken from the custody of his natural parent and placed in foster care. However, a necessary requirement of counseling is open and honest communication with one's counselor. Thus, while this Court will not speculate as to who actually initiated the investigation of the three alleged rapes, we find that if Jon's statements to his counselor were the triggering events, the guardian ad litem's role to determine Jon's best interest and the attorney's role to zealously represent his client are in conflict. Therefore, Jon was denied representation of counsel due to the conflict of interest between Mr. Wise's competing roles.
Furthermore, even assuming that Jon was provided representation through the dual appointment of Mr. Wise, Jon's current counsel contends that Mr. Wise was ineffective in that representation. In order to demonstrate the ineffective assistance of counsel, a person must "show that his trial counsel was deficient and that such deficiency prejudiced the defense."State v. Perez (Sept. 28, 2001), Putnam App. No. 12-01-02, unreported, 2001 WL 1167450 (citing Strickland v. Washington (1984), 466 U.S. 668). However, when maintaining that counsel was ineffective for having failed to file certain motions, a person must also demonstrate that the motion(s) had a reasonable probability of success. State v. Sheppard
(2001), 91 Ohio St.3d 329, 330.
Counsel for Jon contends that Mr. Wise failed to fully investigate the allegations concerning Jon's sisters, as the complaint was filed only three days prior to the delinquency hearing. In addition, Jon's current counsel maintains that Mr. Wise did not raise any issues concerning statements made by Jon during counseling and issues regarding the interview of Jon at his foster home without the benefit of Miranda
warnings. Counsel contends that Mr. Wise's failure to do so was due to his conflicting interest as guardian ad litem, having recommended both that Jon be placed in the temporary custody of DHS and that Jon receive counseling.
We agree with Jon's counsel that an attorney, zealously representing his client, would not recommend that he admit to allegations of rape that were filed merely three days earlier without first having taken the time to fully investigate the circumstances surrounding these allegations. In addition, the circumstances surrounding the forcible rape allegation in Mercer County are somewhat questionable. If these allegations were brought to light through Jon's court ordered counseling with Jon believing that he had to tell the truth in order to return to his mother's custody, as current counsel for Jon maintains, then these statements may have been unconstitutionally compelled. Thus, these statements and any subsequent statements to investigators during the interview at his foster home would appear to have been the proper subject of a motion to suppress.
In any event, counsel's failure to investigate or raise these issues further illustrates how his role in determining Jon's best interest, i.e. to obtain necessary counseling, and his duty to zealously represent his client were in conflict. Because of this conflict, Jon was essentially denied the effective assistance of counsel. Accordingly, the assignments of error are sustained.
For these reasons, the judgment of the Court of Common Pleas, Juvenile Division, of Van Wert County, Ohio, is reversed, and the cause is remanded to that court for further proceedings in accord with the law and consistent with this opinion.
Judgment reversed and cause remanded.
BRYANT and WALTERS, J.J., concur.
[1] This complaint was originally filed in the Common Pleas Court of Mercer County, Ohio, on July 1, 1996, but was transferred to Van Wert County on July 12, 1996, because Jon resided there at the time.