OPINION
{¶ 1} Defendant-appellant James E. Smith, Jr., appeals from his conviction and sentence for one count of burglary, in violation of R.C. § 2911.12(A)(2), a felony of the second degree.
 {¶ 2} On November 4, 2004, Smith was indicted on the following charges: (1) Count I, burglary, in violation of R.C. §2911.12(A)(3), a felony of the third degree; (2) Count II, burglary, in violation of R.C. § 2911.12(A)(2), a felony of the second degree; (3) Count III, aggravated burglary, in violation of R.C. § 2911.11(A)(1), a felony of the first degree; and Count IV, receiving stolen property, in violation of R.C. § 2913.51(A), a felony of the fifth degree. Smith pled not guilty to all four counts on November 12, 2004.
 {¶ 3} Smith filed a motion to sever on March 16, 2005. On March 21, 2005, the trial court granted said motion and severed Counts I and IV from the remaining counts. The matter then proceeded to trial on Counts II and III, burglary and aggravated burglary. At the close of evidence, the trial court withdrew the aggravated burglary count from the jury's consideration upon motion of the State. On March 28, 2005, the jury found Smith guilty of burglary.
 {¶ 4} On May 26, 2005, Smith pled guilty to the remaining, severed counts in the indictment. The trial court then sentenced Smith to five years on Count I, eight years on Count II, and eleven months in prison on Count IV, the terms to be served concurrently for an aggregate sentence of eight years. Smith filed a notice of appeal with this Court on June 24, 2005.
 {¶ 5} In the instant appeal, Smith submits three assignments of error for review by this Court. In his first assignment, Smith contends that his conviction for burglary was against the manifest weight of the evidence. He further asserts that the evidence adduced at trial was insufficient to convict him. With respect to his second assignment, Smith argues that misconduct on the part of the prosecutor deprived him of a fair trial. Lastly, Smith contends that he received ineffective assistance of counsel in light of his attorney's failure to request a mistrial after the State, during opening arguments, disclosed the existence of a photo-spread identification made by the victim. Evidence of the photo-spread had not been included in the discovery packet provided to defense counsel prior to trial. Despite the fact that the court precluded any further mention of the photo-spread for the remainder of the trial, Smith argues that his case was "irreparably tainted" by the State's disclosure. Thus, his trial counsel should have requested a mistrial.
 {¶ 6} For the following reasons, we affirm the decision of the trial court.
 I {¶ 7} Smith's first assignment of error is as follows:
 {¶ 8} "APPELLANT'S BURGLARY CONVICTION WAS AGAINST THE SUFFICIENCY AND/OR THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 9} In his first assignment, Smith contends that his conviction is not supported by the evidence which he aruges does not clearly demonstrate that he is the perpetrator of the burglary. Smith also argues that the evidence presented at trial with respect to his identification as the perpetrator is insufficient to sustain his conviction. Lastly, Smith asserts that no evidence was presented which demonstrated that the individual who entered the victim's residence did so for the purpose of committing a theft. We disagree.
 {¶ 10} The Ohio Supreme Court has clarified the distinction between reviewing questions of manifest weight of the evidence and questions of sufficiency of the evidence. In State v.Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, the Court found that, in essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. at 386. As this Court stated inState v. Lucas (September 21, 2001), Montgomery App. No. 18644, the proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus in State v. Jenks (1991),61 Ohio St.3d 259:
 {¶ 11} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 12} In reviewing whether a conviction is against the manifest weight of the evidence, "an appellate court sits as the `thirteenth juror,' reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, supra,78 Ohio St.3d 380, 678 N.E.2d 541." State v. Reed (Oct. 10, 2003), Champaign App. No. 2002-CA-30, 2003-Ohio-5413, at ¶¶ 12-14.
 {¶ 13} After a thorough review of the record, it is clear that ample evidence was adduced at trial which demonstrated that Smith was the perpetrator of the burglary of the victim's home. The main issue at trial centered on the identification of Smith as the perpetrator.
 {¶ 14} The victim, Tony Murphy, testified that he was completely sure that Smith was the individual whom he observed fleeing from his house after his back door had been kicked in. At one point during the chase, according to the victim, Smith stopped running, turned around and faced him, threatening to shoot. The victim testified that he was able to get a good look at Smith's face. The victim described Smith as approximately 5'9", 200 pounds, with short-cropped hair, and wearing yellow pants. Moreover, the victim was able to provide the police with the license plate number of the vehicle in which he observed Smith flee. The vehicle in which Smith fled belonged to his girlfriend, and the police located the vehicle at her residence. The police also discovered Smith hiding at her residence where the car was located as well.
 {¶ 15} Additionally, there was a witness who offered testimony which corroborated that given by the victim with respect to Smith's description. The witness, Kelly Predieri, was dropping off her daughter at school when she observed a large framed black man with short hair and wearing yellow pants jump into a vehicle matching the description of the vehicle found at Smith's girlfriend's residence. When the police searched the girlfriend's residence, they in fact recovered a pair of yellow pants. These pants matched the description offered by both the victim and Predieri. While evidence was offered at trial which attempted to discredit the victim's identification of Smith, it cannot be said that the jury lost its way in reaching a guilty verdict.
 {¶ 16} Smith's claim that no evidence existed which demonstrated that the individual who entered the victim's residence did so with the purpose of committing a theft is without merit. R.C. § 2911.12(A)(2) defines burglary as trespassing by force, stealth, or deception in an occupied structure when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense. The evidence used to prove these elements may be direct, circumstantial, or both. Circumstantial evidence is the proof of facts or circumstances by direct evidence from which a jury may reasonably infer other related or connected facts which naturally and logically follow, according to the common experience of man. Ohio Jury Instructions 5.10. From the facts of this case, it can be inferred that Smith's purpose in breaking and entering into the victim's residence was to commit a theft offense.
 {¶ 17} In this case, the State presented direct evidence of how Smith punched a hole in the screen door in order to gain entrance to the enclosed porch. This enabled him to reach the back door to the victim's residence, which he then kicked in. InState v. Flowers (1984), 16 Ohio App.3d 313, 315,475 N.E.2d 790, the court stated that "there is a reasonable inference that one who forcibly enters a dwelling, or a business place, does so with the intent to commit a theft offense in the absence of circumstances giving rise to a different inference." In this instant case, it is perfectly reasonable based on the evidence before us to find that Smith's purpose in breaking into the victim's residence was to commit a theft offense.
 {¶ 18} After viewing all the evidence in a light most favorable to the prosecution, as we are required to do when considering a question of sufficiency, we conclude that a rational trier of fact could have found the essential elements of burglary proven beyond a reasonable doubt.
 {¶ 19} Smith first assignment of error is overruled.
 II {¶ 20} Smith's second assignment of error is as follows:
 {¶ 21} "PROSECUTORIAL MISCONDUCT DEPRIVED APPELLANT OF DUE PROCESS, A FAIR TRIAL, AND EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 22} In his second assignment, Smith contends that he was severely prejudiced by certain comments made by the prosecutor in the presence of the jury. First, Smith argues that the State's attorney committed prosecutorial misconduct when he referenced the existence of a photo-spread identification made by the victim when evidence of the photo-spread was not provided in the discovery packet sent to defense counsel prior to trial. Smith asserts that the prosecutor acted improperly a second time when, during closing arguments, he inappropriately vouched for the honesty of the victim.
 {¶ 23} Defense counsel did not object to either of these instances of alleged prosecutorial misconduct during trial. Thus, we must review this entire assignment under a plain error analysis. Crim. R. 52(B) allows a reviewing court to consider errors committed at trial, upon which appellant did not object, only if such errors affected the substantial rights of the appellant. A reviewing court should use the utmost caution in taking notice of plain error and should do so only if it is clear that, but for the error, the result in the trial court would have been different. State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph 2 of syllabus. Notice of plain error should be taken only in exceptional circumstances and only to prevent a manifest miscarriage of justice. Id., paragraph 3 of syllabus.
 {¶ 24} The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights. State v. Smith
(1984), 14 Ohio St.3d 13, 14-15, 470 N.E.2d 883. The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982),455 U.S. 209, 219, 102 S.Ct. 940.
 {¶ 25} With respect to the State's disclosure during opening arguments, the court precluded either party from mentioning the photo-spread for the remainder of the trial based on a suggestion from Smith's trial counsel. Other than its brief mention during the prosecutor's opening statement, the photo-spread was not discussed for the rest of the trial. The trial court also appropriately instructed the jury that opening and closing statements are not evidence. Although the prosecutor's reference to the photo-spread was improper, said statement was an isolated event which does not rise to the level of prosecutorial misconduct. We note that the record does not reveal that the State intentionally withheld this information, but rather was an oversight on the part of the prosecutor.
 {¶ 26} Smith's remaining assertion that he was unfairly prejudiced by the prosecutor's statements concerning the victim's honesty do not constitute prosecutorial misconduct that would warrant a reversal in this matter. During his closing argument, the prosecutor made the following statements:
 {¶ 27} "The State: Now, the victim was honest. He didn't come in here and lie. He could have said oh, yeah, I saw a weapon. He didn't do that. He was honest and told you, I never saw him with a weapon. I never seen (sic) a knife. He threatened to shoot me, but I didn't see a gun. If he wanted to embellish, he could have easily done that. But he didn't do that. From the very first day he was interviewed, by the Detectives, he gave a consistent story that he gave in this courtroom today or yesterday to you."
 {¶ 28} The prosecutor was clearly vouching for the credibility of the victim in the above excerpt. However, while the prosecutor's statement was improper, Smith makes no attempt to demonstrate how this statement was so prejudicial such that the outcome of the case would have been altered. In light of the overwhelming evidence of Smith's guilt, the prosecutor's statements with respect to each instance noted above clearly do not rise to the level of plain error.
 {¶ 29} Smith's second assignment of error is overruled.
 III {¶ 30} Smith's third and final assignment of error is as follows:
 {¶ 31} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 32} In his final assignment, Smith contends that he received ineffective assistance of counsel at the trial level. In support of this assertion, Smith argues that his trial counsel should have requested a mistrial rather than accepting the court's remedy of precluding the introduction of evidence related to the photo-spread during trial. Smith reasons that had his attorney moved for a mistrial, he could have then filed a motion to suppress the pre-trial identification. Smith points out that the victim's pre-trial identification may have tainted his identification of him at trial.
 {¶ 33} In State v. Shells (Oct. 28, 2005) Montgomery App. No. 20802, 2005-Ohio-5787, we stated the following:
 {¶ 34} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373, citing State v.Lytle (1976), 48 Ohio St.2d 391, 396-397, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910,98 S.Ct. 3135.
 {¶ 35} The above standard contains essentially the same requirements as the standard set forth by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, supra, at 687-688. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.
Thus, counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Id.
 {¶ 36} For a defendant to demonstrate that he has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, absent counsel's errors, the result of the trial would have been different. Bradley, supra, at 143. A reasonable probability is a probability sufficient to undermine confidence in the outcome.Strickland, supra, at 694.
 {¶ 37} As previously mentioned, it was defense counsel who originally suggested that the trial court prohibit any introduction of the photo-spread as a sanction for the State's failure to include said evidence in the discovery packet. A debatable decision involving trial tactics generally does not constitute a deprivation of effective counsel. State v.Phillips (1995), 74 Ohio St.3d 72, 656 N.E.2d 643,1995-Ohio-171.
 {¶ 38} While we decline to comment on the efficacy of defense counsel's decision to request that any further mention of the photo-spread be prohibited rather than moving for a mistrial, as Smith suggests, we do note that other strategies existed that counsel could have utilized in order to contend with the State's disclosure. However, we cannot condemn defense counsel for his decision. In State v. Clayton (1980), 620 Ohio St.2d 645, the Ohio Supreme Court discussed an attorney's choice of trial strategy and stated the following:
 {¶ 39} "* * * the fact that there was another and better strategy available does not amount to a breach of an essential duty to his client." In light of the facts before us, we cannot say that defense counsel's decision rises to the level of ineffective assistance.
 {¶ 40} Smith's third and final assignment of error is overruled.
 IV {¶ 41} All of Smith's assignments of error having been overruled, the judgment of the trial court is affirmed.
Wolff, J. and Fain, J., concur.