[Cite as *State v. Gilliam*, 2013-Ohio-888.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case Nos.    11CA3439 |
| | : | 11CA3440 |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| ANDRE J. GILLIAM, | : | |
| | : | |
| and | : | |
| | : | |
| TYRAIL L. GRAHAM, | : | **RELEASED 02/08/13** |
| | : | |
| Defendants-Appellants. | : | |

_____

APPEARANCES:

Sterling E. Gill, II, Columbus, Ohio, for appellants.

Mark E. Kuhn, Scioto County Prosecutor, and Julie Cooke Hutchinson, Scioto County Assistant Prosecutor, Portsmouth, Ohio, for appellee.

_____

Harsha, J.

{¶1}    Andre Gilliam and Tyrail Graham are charged with multiple drug related offenses stemming from the same incident.  In consolidated appeals, the co-defendants contend that the trial court abused its discretion when it removed Sterling Gill as their retained counsel of choice on conflict-of-interest grounds.  Although both have pleaded not guilty, the Appellants claim no actual or potential conflict exists because:  (1) Gilliam denies any knowledge of or involvement in the charged offenses, and (2) Graham admits his culpability and denies Gilliam's knowledge of criminal activity.  They also argue that if a conflict exists or arises in the future, they waived it.  However, a trial court has substantial latitude to refuse waivers of conflicts of interest.  And regardless of whether an actual conflict exists, a possible conflict inheres in almost every instance of

multiple representation.  Given the potential for conflict and fact that nothing in the record suggests the court's decision to refuse the waivers and remove Gill was unreasonable, arbitrary, or unconscionable, we reject the Appellants' arguments and affirm the judgment below.

## I.  Facts

**{¶2}**    In case number 11-CR-261, Gilliam was indicted on two counts of trafficking crack cocaine, one count of possession of crack cocaine, one count of possession of criminal tools, and one count of possession of marihuana.  In case number 11-CR-263, Graham was charged with the same offenses stemming from the same incident.  Gilliam appeared for arraignment with Gill as his retained counsel.  At Graham's arraignment, the court appointed him an attorney.  However, Graham subsequently retained Gill to represent him.  Graham and Gilliam each filed a document titled:  "AFFIDAVIT and WAIVER of POSSIBLE CONFLICT of INTEREST."  In the document, the defendants claim Gill advised them of a potential conflict of interest, and they waived any claim of conflict of interest.  The document also provides:

> "Mr. Gilliam states that he had no knowledge nor involvement in the * * * offenses and Mr. Graham states that the transaction charged in the indictment(s) were of his own doing and as the driver of the vehicle they were in, he sold crack cocaine to undercover law enforcement on [March 11, 2011], **unbeknownst**  to Mr. Gilliam.
>
> Attached here to [sic] is the affidavit of Tyrail Graham dated April 21, 2011 were [sic] he specifies his involvement as [sic] respect to case number 11-CR-263."  (Emphasis sic.)

Both defendants purportedly signed the document on May 17, 2011, but had Gill notarize it on May 2, 2011.  No one attached Graham's April 21, 2011 affidavit to the document.

{¶3}  The court conducted a hearing to determine whether Gill could represent both defendants.  Subsequently, the court found that "a conflict or potential conflict exists between the defendants that is aggravated by the dual representation by one attorney."  The court recognized that at the hearing, both defendants acknowledged the possible conflict and waived it.  Nonetheless, the court expressed its concern "about the allegations, the waiver of conflict of interest and the fact that the document places the blame and knowledge of the crime upon one of the two defendants."  In addition, the court noted that the affidavit referenced in the written waiver, in which Graham was to specify his "involvement" in case 11-CR-263, was not attached to the waiver.  The court recognized the defendants' right to counsel of their own choosing, but "in light of the arguments at hearing and potential for conflict in these cases," the court found that "to protect the constitutional rights of the defendants * * * they cannot be represented by the same attorney."  Therefore, the court held that Gill could not represent either defendant.  This appeal followed.

## II.  Assignments of Error

{¶4}  Gilliam and Graham assign the same error for our review:

**The Trial Court violated the 6th. and 14th. Amendments to the U.S. Constitution by denying Defendant(s) right to retained counsel. Hence the [T]rial Court abused its discretion by its order filed June 29, 2011 by ruling that "…Attorney Sterling Gill may not represent either defendant and shall be removed as counsel for both Andre J. Gilliam and Tyrail Graham, by reason of possible conflict of interest…"**

## III.  Removal of Retained Counsel of Choice

{¶5}  In their sole assignment of error, the Appellants contend that the trial court abused its discretion when it removed their retained counsel on conflict-of-interest

grounds, thereby denying their constitutional right to retained counsel of choice. "A pretrial ruling removing a criminal defendant's retained counsel of choice is a final order subject to immediate appeal." *State v. Chambliss*, 128 Ohio St.3d 507, 2011-Ohio-1785, 947 N.E.2d 651, syllabus. We review a trial court's pretrial disqualification of defense counsel for an abuse of discretion. *State v. Keenan*, 81 Ohio St.3d 133, 137, 689 N.E.2d 929 (1998). The phrase "abuse of discretion" implies the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶6} "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). Therefore, "[a] defendant has only a *presumptive* right to employ his own chosen counsel." (Emphasis sic.) *Keenan* at 137. " '[T]hat presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict.' " *Id.*, quoting *Wheat* at 164.

{¶7} "The trial judge has 'wide latitude' in determining that an actual or potential conflict exists." *Id.*, quoting *United States v. Mays*, 69 F.3d 116, 121 (6th Cir.1995). A possibility of a conflict of interest exists if the " 'interests of the defendants may diverge at some point so as to place the attorney under inconsistent duties.' " *State v. Dillon*, 74 Ohio St.3d 166, 168, 657 N.E.2d 273 (1995), quoting *Cuyler v. Sullivan*, 446 U.S. 335, 356, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), fn. 3 (Marshall, J., concurring in part and

dissenting in part). An "actual, relevant" conflict of interest exists if " 'during the course of the representation, the defendants' interests do diverge with respect to a material factual or legal issue or to a course of action.' " *Cuyler* at 356, fn. 3 (Marshall, J., concurring in part and dissenting in part).

{¶8} Moreover, a trial court "must be allowed substantial latitude in refusing waivers of conflicts of interest not only * * * where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict * * *." *Keenan*, 81 Ohio St.3d at 137, 689 N.E.2d 929, quoting *Wheat* at 163. As the Supreme Court of the United States has explained:

> The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them. *Wheat* at 162-163.

{¶9} In *Keenan*, the trial court disqualified the defendant's retained counsel of choice because his attorneys previously represented his co-defendant. The trial court found an actual conflict of interest existed that precluded the representation under former DR 5-105. On appeal, the Ohio Supreme Court stated: "Whether or not an *actual* conflict of interest existed, there clearly was a *potential* conflict of interest inherent in Keenan's representation by the same attorneys who had represented [his

co-defendant] in litigation stemming from the same set of facts. '[A] possible conflict inheres in almost every instance of multiple representation.' " (Emphasis sic.) *Keenan* at 136-137, quoting *Cuyler* at 348. The Court found the existence of a potential conflict was "fatal" to Keenan's appeal, and it was "irrelevant" that both Keenan and his co-defendant waived their right to conflict free counsel. *Id.* Because nothing in the record justified a finding that the trial court abused its discretion by disqualifying Keenan's attorneys, the Court rejected the portion of Keenan's appeal challenging the disqualification. *Id.* at 137.

**{¶10}** Here, the Appellants contend that "[n]o possible, potential or actual conflict of interest(s) exists in this case." They argue that the Ohio Rules of Professional Conduct do not prohibit Gill's representation of them both. Specifically, they point to Prof.Cond.R. 1.7, which provides:

### RULE 1.7: CONFLICT OF INTEREST: CURRENT CLIENTS

(a) A lawyer's acceptance or continuation of representation of a client creates a conflict of interest if either of the following applies:

(1) the representation of that client will be directly adverse to another current client;

(2) there is a *substantial* risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests.

(b) A lawyer shall not accept or continue the representation of a client if a conflict of interest would be created pursuant to division (a) of this rule, unless all of the following apply:

(1) the lawyer will be able to provide competent and diligent representation to each affected client;

(2) each affected client gives *informed consent, confirmed in*

*writing*;

> (3) the representation is not precluded by division (c) of this rule.

> (c)    Even if each affected client consents, the lawyer shall not accept or continue the representation if either of the following applies:

> (1) the representation is prohibited by law;

> (2) the representation would involve the assertion of a claim by one client against another client represented by the lawyer in the same proceeding.  (Emphasis sic.)

**{¶11}** The Appellants suggest there is no conflict under Prof.Cond.R. 1.7(a) because Gilliam asserts that he has no knowledge of the charged offenses, and Graham admits that the "transaction charged in the indictment(s) were of his own doing and he sold crack cocaine to an undercover law enforcement officer on the date specified, unbeknownst to Mr. Gilliam."  The Appellants indicate that even if a conflict exists or might exist, Gill's representation is appropriate under Prof.Cond.R. 1.7(b) because they gave informed consent, confirmed in writing, and Prof.Cond.R. 1.7(c) does not preclude the representation.

**{¶12}** However, the issue before us is not whether Gill's representation of the Appellants would violate his ethical duties regarding conflicts of interest.  The issue is whether the trial court abused its discretion by removing the Appellants' retained counsel of choice on conflict-of-interest grounds.  Regardless of whether an actual conflict exists, as the trial court concluded, there is clearly a potential conflict of interest inherent in Gill's simultaneous representation of Gilliam and Graham in litigation stemming from the same of set of facts.  *See Keenan*, 81 Ohio St.3d at 136-137, 689 N.E.2d 929.  Again, a " 'possible conflict inheres in almost every instance of multiple

representation.' " *Id.* at 137, quoting *Cuyler,* 446 U.S. at 348, 100 S.Ct. 1708, 64 L.Ed.2d 333.  For instance, it is possible that Graham will change his position and claim Gilliam committed the charged offenses alone or in conjunction with Graham.   And while the Appellants waived any conflict, the court was free to refuse their waiver.

{¶13}  As in *Keenan*, nothing in the record suggests that the trial court's decision to refuse the waiver and remove retained counsel was unreasonable, arbitrary, or unconscionable.  Instead, it is clear the court based its decision on the potential for conflict and the court's desire to protect the Appellants' constitutional rights. Accordingly, we overrule the Appellants' assignments of error and affirm the judgment below.

JUDGMENT AFFIRMED AND
CAUSE REMANDED FOR
FURTHER PROCEEDINGS.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED, the CAUSE IS REMANDED, and that Appellants shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Kline, J. & McFarland, J.:  Concur in Judgment and Opinion.

For the Court

BY: _____
William H. Harsha, Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**