OPINION *Page 2 
{¶ 1} On October 3, 2006, appellant, Andrew Carson, a juvenile, was charged with delinquency for illegal conveyance of a deadly weapon into a school safety zone in violation of R.C. 2923.122. Said charge arose after school officials discovered a pocketknife in appellant's pants pocket.
 {¶ 2} On November 3, 2006, appellant filed a motion to suppress, claiming an illegal search of his person. A bench trial before a magistrate commenced on November 16, 2006. By decision filed November 17, 2006, the magistrate denied the motion to suppress, and found appellant delinquent. Appellant filed objections. By judgment entry filed February 12, 2007, the trial court denied the objections. Thereafter, appellant was placed on probation.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS."
 II {¶ 5} "THE TRIAL COURT ERRED WHEN IT FOUND APPELLANT DELINQUENT."
 I {¶ 6} Appellant claims the trial court erred in denying his motion to suppress. Specifically, appellant claims the search of his locker and person by the school principal *Page 3 
did not meet the constitutional guidelines set forth in New Jersey v.T.L.O. (1985), 469 U.S. 325. We disagree.
 {¶ 7} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982),1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 485; State v.Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v.Claytor (1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 8} Appellant argues school officials did not have a reasonable suspicion to justify the search, there was no sense of immediacy requiring a search, and the search *Page 4 
was at police instigation necessitating a higher standard of scrutiny. In support, appellant cited the New Jersey case cited supra, at paragraph two of the syllabus:
 {¶ 9} "* * * Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a determination of whether the search was justified at its inception and whether, as conducted, it was reasonably related in scope to the circumstances that justified the interference in the first place. Under ordinary circumstances the search of a student by a school official will be justified at its inception where there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.* * *"
 {¶ 10} The magistrate's November 17, 2006 decision did not include any facts. However, it did include the finding that "[s]chool officials acted very appropriately and professionally." T. at 28. It is apparent from the transcript that the issues reviewed at the hearing were the same issues addressed in New Jersey.
 {¶ 11} On October 2, 2006, Canton City Police Department Detective Robert Kuehner called the head of security for Plain Local Schools, Jim Aquilo, to "give him a heads up" about appellant having been charged with arson over the weekend, to make the school system aware there might be a safety issue. T. at 6-7, 10. Mr. Aquilo passed this information on to the principal of Glenwood Middle School, Mrs. Donally, and expressed to her his "concern that he might bring something to school that shouldn't be there." T. at 10. Mr. Aquilo suggested searching appellant to make sure he had nothing in his possession "that would start a fire, matches, lighters along those lines." T. at 11. *Page 5 
 {¶ 12} Assistant Principal Mark Parent was also notified of the situation, and he retrieved appellant from his classroom. T. at 13. Mr. Parent searched appellant's locker and his binder, and had appellant empty his pants pockets wherein the pocketknife was discovered. T. at 14. Mr. Parent explained the purpose of searching appellant was to ensure school safety, and to make sure he did not bring something to school he was not permitted to bring such as matches or a lighter. Id.
 {¶ 13} Appellant argues school officials had no personal suspicions, and were acting on a police request or initiative. During the search by the assistant principal, no police were present, nor did the police request a search of appellant's person. T. at 7.
 {¶ 14} We concur with the trial court's analysis that the actions of the school administrators were based on the arson charge, school safety, and the belief that appellant might have matches or a lighter in his possession. Their actions were not done in furtherance of the police investigation on the arson charge, as the charge had already been filed. Under these circumstances, where a student was charged with arson and there existed a school rule prohibiting matches and lighters, we find the search was reasonable. We further find the search was not at the initiation of the police, and immediacy was a concern in determining if appellant possessed matches or a lighter on school property, compromising the safety of the students.
 {¶ 15} Upon review, we find the trial court did not err in denying appellant's motion to suppress. .
 {¶ 16} Assignment of Error I is denied. *Page 6 
 II {¶ 17} Appellant claims the trial court's finding of delinquent was against the sufficiency and manifest weight of the evidence. Specifically, appellant claims the state failed to prove his "Boy Scout" pocketknife was a deadly weapon. We disagree.
 {¶ 18} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks at paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin (1983), 20 Ohio App.3d 172, 175. See also, State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 19} Appellant was convicted of illegal conveyance of a deadly weapon into a school safety zone in violation of R.C. 2923.122(A) which states, "No person shall knowingly convey, or attempt to convey, a deadly weapon or dangerous ordnance into a school safety zone." Appellant argues the evidence against him was devoid of any facts *Page 7 
to establish the small pocketknife in his possession was designed or specially adapted for use as a weapon, or that he possessed, carried, or used the knife as a weapon.
 {¶ 20} The pocket knife consisted of a blade "an inch and a half maybe two inches ah same with the handle part of it." T. at 41.
 {¶ 21} As the state pointed out, "deadly weapon" is defined in R.C.2923.11(A) in the alternative: "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." (Emphasis added.)
 {¶ 22} In support of his argument that the state failed to meet its burden regarding the nature of the pocketknife as a "deadly weapon," appellant cites two cases from this district, State v. Patterson (March 14, 1994), Stark App. No. CA 9435, and State v. Clendenin (January 24, 2000), Stark App. No. 1999CA00228. In Patterson, this court held the state failed to establish the knife in question was a "deadly weapon":
 {¶ 23} "Appellee [the state] ignores the remaining pertinent parts of the `deadly weapon' definition * * * The upshot of appellee's response is that any knife, be it a swiss army knife with its multi-purpose use as a can opener, tweezer, screwdriver, etc., or for that matter a boy scout knife, could qualify as a deadly weapon. We have examined the knife in question and though we concede it was capable of inflicting death, that alone is insufficient to meet the additional statutory definition notedsupra, an element on which the appellee bears the burden of proof beyond a reasonable doubt."
 {¶ 24} In Clendenin, this court found the state established the knives in question were "deadly weapons" because the offender possessed the knives in his locker, and he knew they were capable of inflicting death by virtue of his threats to kill two students. *Page 8 
 {¶ 25} An inch and a half to two inch blade is clearly capable of inflicting a wound that could result in death. Although its proposed use, and appellant's reason for having it in his possession, may not be to inflict a mortal wound, the issue is whether it could inflict a mortal wound. Why else are all of our scissors, needles, pocketknives, tweezers, etc. seized by airport security? Under the alternative reading of the definition of a deadly weapon, we find the state met its burden.
 {¶ 26} Upon review, we find the trial court did not err in finding appellant delinquent.
 {¶ 27} Assignment of Error II is denied.
 {¶ 28} The judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is hereby affirmed.
By Farmer, P.J.
Wise, J. and concur and
 Edwards, J. dissents. *Page 10 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is affirmed. *Page 9