[Cite as *State v. Whatley*, 2016-Ohio-5713.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-150471 |
| | | TRIAL NO. B-1406418 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| LARRY WHATLEY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 9, 2016

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Marguerite Slagle*, Assistant Public Defender, for Defendant-Appellant.

**STAUTBERG, Judge.**

{¶1}     Defendant-appellant Larry Whatley was indicted for aggravated burglary, felonious assault, kidnapping, and two counts of rape in the aftermath of a multi-day ordeal at the apartment of Leah Jarmon.  Whatley pleaded not guilty to the charges, and the case proceeded to a jury trial.  The jury found Whatley guilty of aggravated burglary and felonious assault.  The jury was unable to reach an agreement on the rape and kidnapping charges, and those charges were subsequently dismissed.  The trial court sentenced Whatley to 11 years' imprisonment for aggravated burglary, and 4 years' imprisonment for felonious assault, with the imprisonment terms to run consecutively.

{¶2}     Whatley timely appealed, and in his sole assignment of error challenges the weight and sufficiency of the evidence used to convict him of aggravated burglary.  He does not challenge his felonious assault conviction.  For the reasons below, we affirm the judgment of the trial court.

## Background

{¶3}     Whatley and Jarmon have known each other since childhood and had dated "on and off" over the years.  Jarmon had also occasionally allowed Whatley to stay at her apartment during times that he was homeless.  Jarmon testified that she ended any romantic involvement with Whatley sometime in late 2013 or early 2014, and that she no longer permitted Whatley in her home.  Tension developed between the two and their relationship devolved into verbal and physical altercations, which on occasion required police involvement.

{¶4}     On November 8, 2014, Whatley gained entry into Jarmon's apartment while Jarmon was babysitting at her daughter's home.  Jarmon testified that she

2

returned home later that evening to find Whatley hiding in her bedroom with a butcher knife. Jarmon testified that Whatley forced her to lay in bed with him and engage in sex acts, which was followed by Whatley spending the night while sleeping next to Jarmon with the knife close by his side.

{¶5} On November 9, Jarmon and Whatley did not leave the apartment. Jarmon testified that she had turned off her cell phone at Whatley's insistence. Whatley spent most of the day playing with an iPad, which belonged to Jarmon's daughter. At some point, Whatley's use of the iPad or Jarmon's refusal to sleep with Whatley triggered a fight; Whatley came at Jarmon with the butcher knife. Jarmon tried to protect herself by grabbing the knife's blade and suffered severe lacerations to her hands.

{¶6} Jarmon testified that Whatley eventually calmed down and handed the butcher knife to Jarmon, which she hid under a seat cushion on a kitchen chair. When Whatley went to retrieve towels for Jarmon's wounds, Jarmon ran to her bedroom and shut the door. Whatley kicked in the door to the bedroom, entered with a pair of scissors, and stabbed Jarmon in her lower back. Whatley calmed down again and took Jarmon into the bathroom to put towels on her wounds. When he left the bathroom, Jarmon tried to close the door. Again, Whatley returned and "busted on in with another knife," which she identified as a pocketknife, but he did not physically harm her with the pocketknife.

{¶7} In the early morning hours of November 10, Whatley called 911. Whatley told the 911 operator that Jarmon fell on glass while cleaning in the bathroom. An ambulance took Jarmon to the hospital, and Whatley rode along. Jarmon later told her medical providers and a police officer that she did not fall, but

3

had been assaulted by Whatley, which triggered an investigation and indictment of Whatley.

### Assignment of Error

{¶8}    In his sole assignment of error, Whatley argues that his conviction for aggravated burglary was based on insufficient evidence.

{¶9}    In reviewing the sufficiency of the evidence to support a criminal conviction, the court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶10}    Whatley was indicted for and convicted of aggravated burglary in violation of R.C. 2911.11(A)(2), which provides:

> No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * * [t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

The term "deadly weapon" is defined in R.C. 2923.11(A) as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

{¶11}    In his brief, Whatley focuses on the pocketknife that was on his person at some point while in Jarmon's apartment, and argues (1) there was no evidence he

had the pocketknife when he entered the apartment, and (2) the pocketknife is not a deadly weapon. These arguments are not persuasive.

{¶12}    The state need not prove that Whatley had the pocketknife, or any other deadly weapon, on his person at the time he gained access to Jarmon's apartment. "For purposes of defining the offense of aggravated burglary pursuant to R.C. 2911.11, a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass." *State v. Fontes*, 87 Ohio St.3d 527, 721 N.E.2d 1037 (2000), syllabus. Likewise, a defendant need not possess the deadly weapon upon the initial trespass, but can acquire the weapon in the course of the trespass. "If the purpose of the aggravated burglary statute is to protect against the potential of danger to inhabitants, it is only logical to include a deadly weapon or firearm acquired after entry under the prohibitions contained in the statute." *State v. Riggsby*, 12th Dist. Madison No. CA87-06-014, 1987 Ohio App. LEXIS 10328, *6 (Dec. 31, 1987). "The crime of aggravated burglary continues so long as the defendant remains in the structure being burglarized because the trespass has not been completed." *State v. Powell*, 59 Ohio St.3d 62, 63, 571 N.E.2d 125 (1991).

{¶13}    Here, a jury could conclude that the deadly weapon was either the pocketknife that Whatley was alleged to have brought with him, or the butcher knife or the scissors that Whatley subsequently acquired during the ongoing trespass.[1] Each of the foregoing is a deadly weapon as defined in R.C. 2923.11(A) in the context of this case. Undoubtedly, the scissors and the butcher knife are capable of inflicting death, and were utilized in this case to do physical harm to Jarmon. The pocketknife is also capable of inflicting death. *See State v. Carusone*, 1st Dist. Hamilton No. C-

---

[1] Indeed, during the state's closing statements to the jury, it argued that Whatley had a deadly weapon on or about his person or under his control when he accessed the butcher knife sometime after entering the apartment, the scissors as the events unfolded, or the pocketknife.

140737, 2015-Ohio-4397, ¶ 26; *In re Carson*, 5th Dist. Stark No. 2007CA00070, 2007-Ohio-5687. And although the pocketknife may not have caused injuries, it was used as a weapon by Whatley.

{¶14} In this case, a rational trier of fact could have reasonably concluded that Whatley's presence at Jarmon's apartment during the weekend of November 8, 2014, constituted trespass, and that Whatley formed the intent to commit a criminal offense at some point before or during the course of his trespass. *See State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 33. Moreover, a rational trier of fact could have reasonably concluded that any of the objects used by Whatley as a weapon throughout the course of the weekend constituted a deadly weapon. Therefore, after viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of aggravated burglary proven beyond a reasonable doubt. Consequently, Whatley's sufficiency argument is without merit.

{¶15} Whatley also argues under his sufficiency assignment of error that his conviction was against the manifest weight of the evidence. When considering a challenge to the weight of the evidence, a different standard is applied.

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.

*State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 151, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), and *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶16}       Here, the jury found Whatley guilty of aggravated burglary.  It appears, with that finding, that the jury believed Jarmon's testimony.  After reviewing the record, we do not believe that this finding was improper or erroneous, especially given that the resolution of factual issues primarily resides with the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.  This case is not the exceptional case in which the evidence weighs heavily against the conviction.  Therefore, following our review of the record, we do not find that the jury lost its way and created such a manifest miscarriage of justice that Whatley's conviction must be reversed and a new trial ordered.

{¶17}       We overrule Whatley's sole assignment of error.

## Conclusion

{¶18}       We hold that Whatley's conviction of aggravated burglary was based upon sufficient evidence and was not against the manifest weight of the evidence. The judgment of the trial court is affirmed.

Judgment affirmed.

**FISCHER, P.J.,** and **DEWINE, J.,** concur.

Please note:

This court has recorded its own entry this date.