[Cite as *State v. Ashley*, 2017-Ohio-188.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 104305

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## HENRY C. ASHLEY, JR.

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-599418-A

**BEFORE:** E.A. Gallagher, P.J., S. Gallagher, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** January 19, 2017

**ATTORNEY FOR APPELLANT**

Shirley M. Asale
815 Superior Avenue, Suite 611
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY: Mary Weston
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, P.J.:

{¶1} Defendant-appellant Henry Ashley, Jr., appeals his convictions entered in the Cuyahoga County Court of Common Pleas.   For the following reasons, we affirm.

**Factual and Procedural Background**

{¶2} Ashley was charged by a Cuyahoga County Grand Jury with two counts of murder, two counts of felonious assault and one count of domestic violence.   The case proceeded to a jury trial where the following facts were elicited.

{¶3} On the evening of September 17, 2015, Ashley and his wife, Frances, were drinking alcohol in their residence at 2877 Martin Luther King Drive.   They began to argue over alcohol.   The argument escalated when Ashley questioned Frances' fidelity based on her prior, multi-day absences from their home as well as a burning sensation that Ashley had begun experiencing in his groin after engaging in sex with Frances.   Ashley informed Frances that he had consulted with a doctor regarding the condition earlier in the day.   Frances denied any infidelity and the argument quickly became physical. Ashley described the physical altercation in a police interview as follows:

> We got into [an] argument where she tried run, I tried to hold her, she grabbed a broom and she started hitting me, she broke my necklace, and tore up my shirt, and I fell on the ground. I fell on the floor of the house and I grabbed her, but once I grabbed her I brought a pair of scissors and I started sticking her [with the scissors].

{¶4} Ashley inflicted 16 stab wounds upon Frances's head, trunk and extremities and she suffered various abrasions and contusions caused by blunt force trauma.   The most significant wounds sustained by Frances included two stab wounds that penetrated

two and a half inches into her scalp and scraped against her skull, multiple stab wounds to her upper back, a slashing wound beginning underneath her right eye and extending to her ear and three stab wounds to the back side of her neck, two of which penetrated her vertebral artery. Although bleeding from all of Frances' various wounds contributed to her death, the latter two wounds to her vertebral artery, by themselves, would have been fatal as the artery carries oxygen to the brain. Doctor Andrea McCollom, a deputy medical examiner with the Cuyahoga County Medical Examiner's office, opined that it would have been a matter of minutes before Frances lost consciousness and succumbed to her wounds.

{¶5} Ashley told police that after the physical confrontation ended, he spoke with Frances and went to bed. When he awoke in the morning he found Frances dead on the living room floor. After he called various family members, Ashley's brother escorted him to the Fourth District Cleveland police station where he turned himself in and provided the above account of the prior night's events.

{¶6} Ashley testified at trial and contradicted several of the facts in his prior recorded statement to police. He stated that rather than pursuing Frances as she attempted to leave, he walked away from the argument. He also asserted that he was "just swinging" the scissors during the confrontation and was unaware that he had made contact with Frances.

{¶7} The jury found Ashley guilty of one count of murder, both counts of felonious assault and the charge of domestic violence. The jury found Ashley not guilty

of the remaining count of murder. The trial court merged the murder, felonious assault and domestic violence counts as allied offenses and the state elected to proceed to sentencing on the murder count. The trial court imposed a prison term of 15 years to life on that count.

**Law and Analysis**

**I.  Conflict of Interest**

{¶8} In his first assignment of error, Ashley argues that he was denied his right to effective assistance of counsel when the trial court accepted a conflict of interest waiver when it knew, or should have known, an actual conflict of interest existed between himself and one of his two court-appointed defense attorneys.

{¶9} The potential conflict was discovered and brought to the attention of the trial court following a break during voir dire. The state informed that trial court that, in examining one of Ashley's two prior convictions for domestic violence, it was discovered that one of Ashley's defense attorneys, Fernando Mack, had been the magistrate in the East Cleveland Municipal Court who accepted Ashley's plea to that offense in 2007. Mack confirmed that he had been a magistrate in East Cleveland in 2007, however, neither he nor Ashley recalled the event or their prior interaction. The trial court confirmed that Ashley understood Mack's prior role and opined that it was unaware of any potential conflict of interest existing between Mack and Ashley based on that interaction. Nonetheless, the trial court asked Ashley if he had any objection to Mack's continued representation of him and offered Ashley an opportunity to continue the trial so

new counsel could be appointed. Ashley declined the trial court's offer, waived his right to remove Mack and elected to proceed with Mack as one of his two attorneys.

{¶10} Ashley now argues that the trial court erred in failing to explore the matter and accepting his waiver without fully explaining the implications.

{¶11} The Sixth Amendment to the United States Constitution guarantees that representation shall be free from conflicts of interest. *State v. Dillon*, 74 Ohio St.3d 166, 1995-Ohio-169, 657 N.E.2d 273. In *State v. Gillard*, 64 Ohio St.3d 304, 1992-Ohio-48, 595 N.E.2d 878, the Ohio Supreme Court recognized:

> where a trial court knows or reasonably should know of an attorney's possible conflict of interest in the representation of a person charged with a crime, the trial court has an affirmative duty to inquire whether a conflict of interest actually exists. The duty to inquire arises not only from the general principles of fundamental fairness, but from the principle that where there is a right to counsel, there is a correlative right to representation free from conflicts of interest. Where a trial court breaches its affirmative duty to inquire, a criminal defendant's rights to counsel and to a fair trial are impermissibly imperiled and prejudice or 'adverse effect' will be presumed.

*Id*. at 311-312.

{¶12} A possibility of a conflict exists if the "interests of the defendants may diverge at some point so as to place the attorney under inconsistent duties." *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). A trial court must determine whether an actual conflict of interest exists when the court learns of, or should have learned of, a potential conflict between defendants and their counsel. *State v. Kelly*, 8th Dist. Cuyahoga Nos. 91875 and 91876, 2010-Ohio-432, ¶ 11.

{¶13} An "actual conflict of interest" means a conflict that affected counsel's performance — as opposed to a mere theoretical division of loyalties. *State v. Burton*, 8th Dist. Cuyahoga No. 95150, 2011-Ohio-2516, ¶ 10, citing *Mickens v. Taylor*, 535 U.S. 162, 171, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). After a possible conflict is brought to the court's attention, a waiver of the conflict must be made on the record in open court. *Id*. at ¶ 11, citing *State v. Johnson*, 70 Ohio App.2d 152, 160, 435 N.E.2d 429 (8th Dist. 1980).

{¶14} In *Burton*, it was discovered by trial counsel during the course of representation that Burton's attorney may have previously been the sentencing magistrate or acting judge that sentenced his client to a lesser charge in a prior municipal court case. It was at the sentencing hearing that Burton's attorney made a record of the potential prior interaction as well as the fact that he had previously addressed the matter with his client, who had no objection. *Id*. at ¶ 3-5. Unlike the present case, the trial court made absolutely no further inquiry of the matter and did not obtain a waiver in open court. *Id*. at ¶ 13. This court stated that it "reluctantly" remanded due to the trial court's failure to inquire into a possible conflict.

{¶15} We find no such failure on the part of the trial court in this instance. The trial court conducted an appropriate inquiry when the matter was brought to its attention and, despite the record revealing no evidence to suggest a present conflict of interest between Ashley and his attorney, the trial court offered Ashley an opportunity to obtain new counsel. Ashley declined and entered an informed waiver of the matter.

{¶16} Ashley's first assignment of error is overruled.

**II. Ineffective Assistance of Counsel**

{¶17} In his second assignment of error, Ashley argues that his trial counsel failed to provide effective assistance of counsel by failing to adequately review the furthermore specification on his domestic violence that led to the discovery that Mr. Mack had previously been the magistrate on his 2007 domestic violence conviction and that his counsel failed to explain the risks associated with his conflict of interest waiver from the first assignment of error.

{¶18} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶19} We find no prejudice under either of Ashley's arguments. Regarding the furthermore specifications, Ashley stipulated to his prior domestic violence convictions at trial and does not now argue that he entered that stipulation erroneously.

**{¶20}** Ashley supports his argument that Mr. Mack failed to explain the risks associated with his conflict of interest with a citation to Prof.Cond.R.1.12(A), which prohibits a lawyer from representing anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer unless all parties to the proceeding give informed consent, confirmed in writing. Even if we accept the argument that Ashley's prior convictions, referenced in the furthermore specification to which he stipulated, provided a sufficient link between the two cases to bring this situation within the confines of Rule 1.12(A), Ashley has failed to establish prejudice under *Strickland*. Ashley presents absolutely no credible theories of any legitimate conflicts of interest between himself and Mr. Mack that would undermine confidence in the outcome of his trial.

**{¶21}** Under the *Johnson* line of cases examined in the first assignment of error, a defendant is still required to establish that a conflict of interest adversely affected his counsel's performance. *Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). Ashley's separate challenge to the adequacy of his representation under *Strickland* requires a showing of prejudice that he cannot make. As the trial court noted following its inquiry into the matter, there is simply no evidence in the record to suggest that a conflict of interest existed between Ashley and Mr. Mack based on a municipal court guilty plea that neither recalled.

**{¶22}** Ashley's second assignment of error is overruled.

**III. Manifest Weight**

**{¶23}** In his third assignment of error, Ashley argues that his convictions for murder, felonious assault and domestic violence are against the manifest weight of the evidence.

**{¶24}** A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *State v. Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541 (1997); *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. "When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a 'thirteenth juror' and may disagree 'with the factfinder's resolution of conflicting testimony.'" *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). In conducting such a review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraphs one and two of the syllabus. Reversal on manifest weight grounds is reserved

for the "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *Martin*, *supra*.

**{¶25}** The sole argument presented by Ashley under this assignment of error is that he did not possess the requisite mens rea to support the offenses for which he was convicted. Ashley argues that the record lacks evidence to demonstrate that he acted purposefully in order to support a conviction for murder pursuant to R.C. 2903.02(A). However, the jury found Ashley not guilty of murder in violation of R.C. 2903.02(A) in count 1. Instead, the jury found Ashley guilty of felony murder pursuant to R.C. 2903.02(B) which does not contain a mens rea component. *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 43. A defendant may be found guilty of felony murder even if there was no intent to cause the victim's death. *Id*., citing *State v. Miller*, 96 Ohio St.3d 384, 2002-Ohio-4931, 775 N.E.2d 498. "Rather, a person commits felony murder pursuant to R.C. 2903.02(B) by proximately causing another's death while possessing the mens rea element set forth in the underlying felony offense. In other words, the predicate offense contains the mens rea element for felony murder." *Id*.

**{¶26}** The underlying predicate offense in this case is felonious assault in violation of R.C. 2903.11, which carries a mens rea of "knowingly." A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). Whether a defendant acted "knowingly" must be inferred from the totality of the circumstances surrounding the alleged offense. *State v. Jones*, 8th Dist. Cuyahoga No. 101311, 2015-Ohio-1818, ¶ 42.

In this instance, Ashley inflicted 16 separate stab wounds upon his wife and admitted to police that he grabbed her and "started sticking her" with the scissors. By his own words the state demonstrated that Ashley knowingly caused serious physical harm to his wife and did so by means of a deadly weapon.[1] Therefore, Ashley's argument that the mens rea evidence in support of his felony murder and felonious assault convictions was against the manifest weight of the evidence is without merit. For the same reasons, Ashley's conviction for domestic violence, which also possesses a mens rea of "knowingly," is not against the manifest weight of the evidence.

**{¶27}** Ashley's third assignment of error is overruled.

The judgment of the trial court is affirmed.

It is ordered that the appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

[1] R.C. 2903.11 and 2923.11 define a "deadly weapon" as any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon. A pair of scissors can qualify as a deadly weapon. *State v. Whatley*, 1st Dist. Hamilton No. C-150471, 2016-Ohio-5713, ¶ 13.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
PATRICIA A. BLACKMON, J., CONCUR