[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 166.]

THE STATE OF OHIO, APPELLEE, *v.* DILLON, APPELLANT.

[Cite as *State v. Dillon,* 1995-Ohio-169.]

*Appellate procedure—Application for reopening appeal from judgment and conviction based on claim of ineffective assistance of appellate counsel— Claim of ineffective assistance based on issue of counsel's failure to raise trial counsel's alleged conflict of interest in representing multiple criminal defendants—Application denied, when.*

(No. 94-2134—Submitted September 12, 1995—Decided December 13, 1995.)

APPEAL from the Court of Appeals for Montgomery County, No. 10138.

_____

{¶ 1} This case concerns the subject of an attorney's conflict of interest in representing multiple criminal defendants.

{¶ 2} A jury convicted appellant, Chris G. Dillon, of kidnapping, aggravated robbery, gross sexual imposition and rape for two separate incidents occurring on April 3, 1986 and April 14, 1986. Attorney Dennis A. Lieberman ("Lieberman") represented Dillon at trial. At that time, Lieberman also represented Vincent Mastice ("Mastice"), who had been charged with crimes committed in a manner similar to the April 1986 offenses. Mastice, however, was in custody in April when those offenses took place.

{¶ 3} Although it is not clear in the record, the state does not dispute the fact that the police questioned Mastice about the April offenses and that Mastice suggested Dillon as a suspect.

{¶ 4} During Dillon's trial, Lieberman presented an alibi defense and argued that the victims misidentified Dillon as their assailant. During cross-examination of Dillon, it appears the state sought to make the point that Dillon adopted the modus operandi for his crimes from his discussions with Mastice about

how Mastice carried out similar crimes. Dillon, however, denied any conversations with Mastice about rapes or robberies. The state then called Mastice to rebut that portion of Dillon's testimony.

{¶ 5} Prior to Mastice's being sworn, during an in-chambers conference, Lieberman disclosed his relationship with Mastice to the court and that he had counseled Mastice regarding his Fifth Amendment privilege the prior evening . The prosecutor also advised the court that Mastice had been charged with rapes and aggravated robberies that were "closely aligned" with those committed by Dillon. Lieberman objected to Mastice's testimony not only because it was improper rebuttal but also because it would be improper for Mastice to invoke his Fifth Amendment privilege in the jury's presence.

{¶ 6} At Lieberman's suggestion, the court appointed a public defender to advise Mastice before he submitted to a voir dire examination by the state. During the voir dire, Mastice confirmed that if called to testify, he would refuse to answer any questions regarding Dillon. The state dismissed Mastice and rested without his testimony.

{¶ 7} According to Dillon, a month following Dillon's conviction, Lieberman represented Mastice in entering a guilty plea to charges pending against Mastice.

{¶ 8} Different counsel represented Dillon on the appeal of his conviction. The brief filed on Dillon's behalf contained no assignments of error and four and one-half pages of argument. The appeal advanced two arguments: juror misconduct and weight of the evidence. The Court of Appeals for Montgomery County affirmed Dillon's convictions.

{¶ 9} In March 1993, Dillon filed an application for delayed reconsideration in the court of appeals pursuant to *State v. Murnahan* (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204. Dillon asserted a claim of ineffective assistance of appellate counsel based upon the "perfunctory brief" which failed to raise the conflict of

2

interest issue. The court of appeals overruled Dillon's application, finding that the trial court sufficiently inquired into a possibility of a conflict, that Dillon failed to show an actual conflict which adversely affected his lawyer's performance, and that Dillon failed to present evidence that the appellate brief prejudiced him.

**{¶ 10}** This cause is now before the court upon an appeal as of right.

_____

*Mathias H. Heck, Jr.,* Montgomery County Prosecuting Attorney, and *Michael L. Gebhart*, Assistant Prosecuting Attorney, for appellee.

*David Goldberger* and *Anne M. Doyle*, for appellant.

_____

**COOK, J.**

**{¶ 11}** The issue before the court is whether Dillon's appellate counsel was ineffective in failing to raise trial counsel's alleged conflict of interest in the appeal of his convictions. Because we find that Dillon's trial counsel did not represent competing interests, and that there was neither a possibility of a conflict of interest nor an actual conflict of interest, we affirm the judgment of the court of appeals.

**{¶ 12}** Where there is a right to counsel, the Sixth Amendment to the United States Constitution also guarantees that representation will be free from conflicts of interest. *State v. Gillard* (1992), 64 Ohio St.3d 304, 312, 595 N.E.2d 878, 883. Both defense counsel and the trial court are under an affirmative duty to ensure that a defendant's representation is conflict-free. The trial court's duty arises when the court knows or reasonably should know that a possible conflict of interest exists or when the defendant objects to the multiple representation. *State v. Manross* (1988), 40 Ohio St.3d 180, 181, 532 N.E.2d 735, 737. Then, the trial court is constitutionally required to conduct an inquiry into the possible conflict of interest. See *id.*

**{¶ 13}** Dillon argues that the trial court's in-chambers conference failed to satisfy its affirmative duty to inquire into a conflict of interest. However, the

threshold issue is whether the court had a duty to inquire into a possible conflict of interest in the first instance. From the facts and circumstances of this case, we conclude that the tenets of the Sixth Amendment imposed no duty upon the trial court to inquire into a possible conflict of interest.

{¶ 14} Joint representation of conflicting interests is "suspect because of what it tends to prevent an attorney from doing." *Holloway v. Arkansas* (1978), 435 U.S. 475, 489-490, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426, 438. Thus, a possible conflict of interest is inherent in almost all instances of joint or multiple representation of conflicting interests. *Cuyler v. Sullivan* (1980), 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 346. "A lawyer represents conflicting interests when, on behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose." *Manross,* 40 Ohio St.3d at 182, 532 N.E.2d at 738. A possibility of a conflict exists if the "interests of the defendants may diverge at some point so as to place the attorney under inconsistent duties." *Cuyler*, 446 U.S. at 356, 100 S.Ct. at 1722, 64 L.Ed.2d at 351-352, fn. 3 (Marshall, J., concurring in part and dissenting in part).

{¶ 15} Dillon contends Lieberman represented conflicting interests because Lieberman represented clients charged with crimes committed in a similar manner and because Mastice implicated Dillon to the police as a suspect. As a result, Dillon maintains that Lieberman had a duty to shift the blame from one client to the other. These contentions do not withstand scrutiny.

{¶ 16} That his two clients were charged with crimes committed in a similar manner does not present Lieberman with a possible conflict of interest. Because Mastice was in custody at the time Dillon's crimes were committed, Mastice could not possibly have committed those crimes. Lieberman, therefore, was under no duty to either client to shift the blame to the other.

{¶ 17} The other basis for claiming Lieberman represented conflicting interests is also faulty. Dillon posits that because Mastice suggested Dillon as a

possible suspect for the April crimes to the police, Lieberman thereby faced a conflict of interest in representing both defendants.  Dillon submits  Lieberman owed a duty to Mastice to negotiate a plea bargain for Mastice by convincing the prosecutor that Dillon was responsible for the crimes with which Mastice was accused.  Dillon, however, was not charged with Mastice's crimes and Mastice could not have committed Dillon's crimes. Testimony adduced at Dillon's suppression hearing indicates that the police did not suspect Dillon in the crimes with which Mastice was charged.  Thus, the fact that Mastice implicated Dillon did not create conflicting duties for Lieberman.

{¶ 18} Even assuming Lieberman persuaded the state to offer Mastice leniency in sentencing in exchange for Mastice's providing names of suspects for the later crimes, Lieberman still did not operate under a possible conflict of interest. According to Dillon, Mastice implicated him to the police prior to Lieberman's representation of Dillon.   Because the negotiations took place when Lieberman represented only one client, Mastice, Lieberman did not represent conflicting interests. Rather, Dillon testified that although Dillon knew Mastice, Dillon never spoke to Mastice about the types of crimes with which Dillon was charged. While Mastice could implicate Dillon in the April crimes, Dillon had no basis  for shifting the blame to Mastice.  Therefore, Lieberman did not have a duty to advocate a position on behalf of Dillon that a duty to Mastice required him to dispute or vice versa.

{¶ 19} Dillon concludes that Lieberman's duty to him required Lieberman to persuade prosecutor, judge and jury that he was the "fall guy" in Mastice's conspiracy of sexual assaults.  However, Dillon fails to provide any arguments as to how Lieberman could have established such an inference, nor can  this court envision any plausible argument which would create an inference that Dillon was the "fall guy" of Mastice's "conspiracy."  Again, because Dillon testified that he

never spoke to Mastice about these types of crimes, there is no basis for an argument that Mastice influenced or somehow forced Dillon to commit the crimes.

{¶ 20} In light of all the facts the trial court knew, and those which Dillon claims the court should have known, we conclude that Lieberman did not represent conflicting interests and that there was no possibility of a conflict of interest in Lieberman's representation of Mastice and Dillon. Therefore, the trial court had no duty to inquire.

{¶ 21} Where a trial court has no duty to inquire and the defendant raises no objection at trial, a defendant must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler,* 446 U.S. at 348, 100 S.Ct. at 1718, 64 L.Ed.2d at 346-347. An "actual, relevant conflict of interests" exists "if, during the course of the representation, the defendants' interests do diverge with respect to a material factual or legal issue." *Id.* at 356, 100 S.Ct. at 1722, 64 L.Ed.2d at 352, fn. 3 (Marshall, J., concurring in part and dissenting in part). In such a case, counsel's duty to one client "tends to lead to disregard for another." *Manross,* 40 Ohio St.3d at 182, 532 N.E.2d at 738.

{¶ 22} Dillon reasons that an actual conflict of interest arose when the prosecutor argued in closing that Dillon and Mastice were involved in a "conspiracy" and when the state attempted to call Mastice as a rebuttal witness against him.

{¶ 23} As part of his defense at trial, Dillon presented evidence of a July 1986 sexual assault committed while he was in custody and in a manner similar to the April assaults. The assailant in the July 1986 assault telephoned a "Mike" after the attack. In reference to the July 1986 attack during his closing argument, the prosecutor told the jury about a "three headed snake"—Dillon, the unknown assailant, and "Mike." At no time did the prosecutor or Lieberman elicit testimony or argue that Mastice was the unknown assailant.

**{¶ 24}** Dillon contends that this argument exposed him and Mastice to co-conspirator liability by which each could be held responsible for the criminal acts of the other and raised an actual conflict of interest. This argument is unpersuasive. Neither Mastice nor Dillon was charged with conspiracy. That Mastice and Dillon knew each other neither inculpates nor exculpates Dillon, since Dillon testified he never spoke to Mastice about these crimes. The reference in closing argument to a "conspiracy" fails to enhance either Dillon's or Mastice's crimes.

**{¶ 25}** In addition, Dillon's argument that an actual conflict arose when the state called Mastice as a witness is equally unconvincing. Dillon asserts the conflict became obvious when Lieberman objected to Mastice's testimony, since the trial judge thought the jury might infer that Mastice had committed the crimes. However, any testimony by Mastice would have disclosed that he could not have committed the April crimes and we see no other way that Mastice could be held responsible for them. Given the fact that Mastice implicated Dillon to the police, it seems more likely that Mastice's testimony would have inculpated rather than exculpated Dillon. Therefore, Lieberman's decision to object to Mastice's testimony was a reasonable one and not suspect.

**{¶ 26}** In light of these facts, we find no actual conflict of interest which adversely affected Lieberman's performance and no violation of Dillon's Sixth Amendment right to conflict-free representation. Accordingly, Dillon's appellate counsel was not ineffective in failing to raise the issue upon appeal.

**{¶ 27}** Finally, Dillon challenges the appellate court's finding that he failed to meet both prongs of the *Strickland* test, *i.e.,* that the "deficient" brief filed by appellate counsel prejudiced him. *Strickland v. Washington* (1984), 446 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 687. Rather, Dillon maintains, an appeal pursuant to *State v. Murnahan* (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204, must be granted where there is a "colorable claim" of ineffective assistance of

counsel. Dillon argues the mere fact that the original appellate counsel failed to raise the conflict of interest issue fulfills the *Murnahan* standard.

{¶ 28} Pursuant to *Murnahan,* a defendant may apply for delayed reconsideration (now application for reopening, see App.R. 26[B]) in courts of appeals only where he has set forth a colorable claim of ineffective assistance of counsel, where the circumstances render a claim of *res judicata* unjust, and the time periods for reconsideration in courts of appeals and direct appeal to this court have expired. *Id.* at 66, 584 N.E.2d at 1209. However, an appellate court should determine whether there are substantive grounds for relief before granting reconsideration. *Id.* In making that determination, the court may consider any motions, supporting affidavits, and all the files and records pertaining to the proceedings against the defendant that were originally transmitted to the court of appeals. *Id.*

{¶ 29} A "colorable claim" of ineffective assistance of counsel necessarily includes presenting some evidence of both prongs of *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Thus, the court did not err in requiring Dillon to provide some evidence of prejudice. Because *State v. Murnahan* encourages review of the substantive grounds for relief before a court grants such a motion, neither did the court err in reviewing both prongs of the *Strickland* standard.

{¶ 30} Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK and F.E. SWEENEY, JJ., concur.

PFEIFER, J., dissents.

_____

**DOUGLAS, J., concurring.**

{¶ 31} The in-depth and thorough review of the record in this case, as so well set forth herein by Justice Cook, makes clear the professional and highly competent way in which attorney Dennis A. Lieberman handled a very difficult matter.  When the series of events occurring in this case are detailed in chronological order, the step-by-step analysis by Lieberman of any possible conflict in his representation of both Mastice and Dillon, and his decision-making when so confronted, reflect well on both Lieberman and our profession.

_____