[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Williams*, Slip Opinion No. 2021-Ohio-3152.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-3152

THE STATE OF OHIO, APPELLEE, *v.* WILLIAMS, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Williams*, Slip Opinion No. 2021-Ohio-3152.]

*Criminal Law—Sixth Amendment—Conflict of interest—Multiple representation of codefendants—When a trial court does not know, and should not reasonably have known, of a possible conflict of interest in an attorney's representation of two or more codefendants charged with a crime, the trial court has no affirmative duty to inquire whether a conflict of interest exists—Court of appeals' judgment affirmed.*

(Nos. 2020-0658 and 2020-0991—Submitted April 13, 2021—Decided September 15, 2021.)

APPEALS from the Court of Appeals for Cuyahoga County,
No. 108333, 2020-Ohio-1378 and 2020-Ohio-3588.

_____

STEWART, J.

{¶ 1} In this discretionary appeal, we consider whether a trial court has an affirmative duty to inquire into the possible conflict of interest created by an attorney's dual or multiple representation[1] of codefendants in a criminal case. Although making this inquiry is the better practice, we conclude that absent some factor which would alert the trial court about a possible conflict of interest created by such representation, the court has no affirmative duty to do so. We therefore affirm the judgment of the court of appeals.

## I. BACKGROUND

{¶ 2} In December 2018, appellant, Marshall Williams, and his wife, Shawnte Williams, were indicted on charges related to drug possession and trafficking. Thereafter, they agreed to a joint plea deal and subsequently pled guilty to certain charges. Shawnte pled guilty to possession of criminal tools in violation of R.C. 2923.24(A), a fifth-degree felony with a forfeiture specification. Marshall pled guilty to one count of drug trafficking in violation of R.C. 2925.03(A)(2), a first-degree felony with a forfeiture specification, and one count of drug possession in violation of R.C. 2925.11(A), a fourth-degree felony with a forfeiture specification. In exchange for their guilty pleas, the state nolled the four remaining counts on Marshall's indictment and the two remaining counts on Shawnte's indictment. The trial court sentenced Shawnte to five years of probation and imposed a fine of $2,000. The court stated that the fine would be vacated if she paid the court costs and probation-supervision fees within three years. The court sentenced Marshall to nine years in prison for the trafficking offense and 18 months for the possession offense, to be served concurrently. The court also imposed a fine of $10,000 and ordered that Marshall forfeit two vehicles, two digital scales, eight cell phones, and $14,630. The same attorney represented Shawnte and Marshall at their plea and sentencing hearings. When asked by the trial court if they were

---

1. The terms "dual representation," "multiple representation," and "joint representation," have the same meaning throughout this opinion.

satisfied with the representation they had received from their attorney, both Marshall and Shawnte responded, "Yes."

{¶ 3} On appeal to the Eighth District Court of Appeals, Marshall argued in his third assignment of error that he was denied due process and his right to counsel, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution. He asserted that his convictions should be vacated because the trial court "failed to assure that [his] counsel explained the very real conflict posed by joint representation" before allowing the matter to proceed. The court of appeals overruled Marshall's conflict-of-interest claim, finding that "the record does not indicate any special circumstances by which the trial court knew or reasonably should have known" of a conflict. *State v. Williams*, 2020-Ohio-1378, ¶ 34. ("*Williams I*"). Specifically, the court noted that Marshall did not object or express reservations about the dual representation and that the plea deal was beneficial to Marshall and Shawnte. *Id*. at ¶ 36-38. Moreover, the court determined that the record did not reveal an actual conflict that adversely affected his counsel's performance. *Id*. at ¶ 40-41.

{¶ 4} On April 20, 2020, Marshall filed a motion for reconsideration in the court of appeals, and on May 26, 2020, he also filed a notice of appeal with this court. On July 2, 2020, while Marshall's memorandum in support of jurisdiction was pending in this court, and for reasons unrelated to the proposition of law raised in his appeal to this court,[2] the court of appeals vacated its judgment in *Williams I* and issued a subsequent opinion, once again affirming Marshall's convictions. *State v. Williams*, 2020-Ohio-3588 ("*Williams II*"). Since a motion for reconsideration was pending before the court of appeals and this court had not yet

---

2. In his motion for reconsideration, Marshall asserted that in *Williams I*, the court of appeals had failed to resolve one component of his fourth assignment of error—i.e., that his trial attorney was ineffective for failing to seek a waiver of a mandatory fine. With the exception of a short additional discussion of the fine-waiver issue, *Williams II* effectively mirrors *Williams I*.

accepted jurisdiction to hear *Williams I*, the court of appeals had the authority to reconsider and vacate its initial decision. *See State v. Murphy*, 49 Ohio St.3d 293, 296, 551 N.E.2d 1292 (1990) (a court of appeals retains jurisdiction to rule on an application for reconsideration unless and until this court exercises its discretionary and exclusive jurisdiction to hear the case). On August 5, 2020, we accepted jurisdiction on Marshall's single proposition of law. *See* 159 Ohio St.3d 1468, 2020-Ohio-3884, 150 N.E.3d 122. On August 12, 2020, Marshall appealed *Williams II*, asserting the same proposition of law we accepted in *Williams I*.

{¶ 5} On September 25, 2020, the state filed a motion to dismiss Marshall's appeal in *Williams I* as having been improvidently allowed. In response to the state's motion, Marshall acknowledged that his appeal of the appellate court's judgment in *Williams I* was filed prematurely in this court because it was filed while his application for reconsideration was pending in the court of appeals. And though Marshall did not oppose the state's motion, he urged this court to accept jurisdiction of his proposition of law in *Williams II*, which was identical to the proposition of law he raised in *Williams I*. This court accepted jurisdiction of *Williams II*, sua sponte consolidated the cases, and ordered the cases to proceed on Marshall's single proposition of law already briefed in *Williams I*:

> A trial court has a duty to inquire into the possible conflict of interest created by an attorney's dual or multiple representation of codefendants in a criminal case.

*See* 160 Ohio St.3d 1438, 2020-Ohio-4983, 155 N.E.3d 939; 160 Ohio St.3d 1484, 2020-Ohio-5454, 158 N.E.3d 616; 160 Ohio St.3d 1484, 2020-Ohio-5454, 158 N.E.3d 612.

4

## II. ANALYSIS

{¶ 6} The fundamental right to counsel includes a "correlative right to representation free from conflicts of interest." *State v. Gillard*, 64 Ohio St.3d 304, 311, 595 N.E.2d 878 (1992). "Both defense counsel and the trial court are under an affirmative duty to ensure that a defendant's representation is conflict-free." *State v. Dillon*, 74 Ohio St.3d 166, 167-168, 657 N.E.2d 273 (1995). Defense counsel has a duty to provide effective, conflict-free assistance of counsel under the Sixth Amendment and its supporting caselaw, *see, e.g.*, *Cuyler v. Sullivan*, 446 U.S. 335, 345, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), and pursuant to the Ohio Rules of Professional Conduct.[3] A trial court's affirmative duty to inquire into multiple representation of codefendants arises when the trial court knows or has reason to know that a possible conflict of interest exists or when a defendant objects to the multiple representation. *State v. Manross*, 40 Ohio St.3d 180, 181-182, 532 N.E.2d 735 (1988).

{¶ 7} This court has explained that when reviewing a case in which a trial court did not inquire into whether an attorney's representation of multiple defendants presented a conflict of interest, courts must apply a two-step approach. *Id.* at 181. First, the reviewing court must determine whether the trial court's duty to inquire arose in the first instance; that is, in the absence of a timely objection, whether the trial court knew or reasonably should have known that a possible conflict existed. *Id*.; *see also Gillard* at 311-312; *Cuyler* at 346-347. If the trial court's affirmative duty arose but it did not inquire, the case must be remanded to the trial court with instructions to conduct a hearing to determine whether an actual conflict of interest existed. *Gillard* at 311-312; *see also State v. Johnson*, 185 Ohio

---

3. Prof.Cond.R. 1.7(c) prohibits an attorney from representing a client, regardless of the client's informed consent, if the representation is prohibited by law or when the representation would involve the assertion of a claim by one client against another client represented by the attorney in the same proceeding.

App.3d 654, 2010-Ohio-315, 925 N.E.2d 199, ¶ 6-8 (3d Dist.) (remanding for a hearing to determine whether an actual conflict existed when a possible conflict was raised and discussed, but the trial court did not inquire whether an actual conflict existed and did not advise the defendant of his right to conflict-free counsel); *State v. Haugabrook*, 8th Dist. Cuyahoga No. 103693, 2016-Ohio-5838, ¶ 17, 21 (vacating a guilty plea when the defendant expressed reservations about dual representation with his wife; trial court erred by not explaining the risks of dual representation and not advising the defendant of his constitutional right to conflict-free representation). In the absence of an objection or circumstances when the trial court should reasonably have known about a possible conflict, the trial court may assume that there is no conflict or that the risk of conflict is known to and accepted by the codefendants. *Cuyler* at 346-347.

{¶ 8} Second, if the reviewing court determines that the trial court's affirmative duty to inquire into a possible conflict with multiple representation did not arise, the defendant must show that an actual conflict of interest adversely affected his lawyer's performance. *Manross* at 182; *accord Dillon* at 169. An actual conflict of interest exists when " 'the defendants' interests do diverge with respect to a material factual or legal issue.' " *Dillon* at 169, quoting *Cuyler* at 356, fn. 3 (Marshall, J., concurring in part and dissenting in part). Raising the *possibility* of a conflict of interest is insufficient. *Manross* at 182; *see also Cleveland v. Harris*, 8th Dist. Cuyahoga No. 105545, 2018-Ohio-1522, ¶ 19 (finding no actual conflict when the defendant failed to direct the reviewing court to specific instances in the record demonstrating an actual conflict of interest).

{¶ 9} In *Manross*, a mother and son, Rose and Russell Manross, were charged in a ten-count indictment with various offenses related to drug trafficking. 40 Ohio St.3d at 180, 532 N.E.2d 735. Russell was charged with multiple counts of trafficking and Rose was charged with a single count of aiding and abetting the sale of cocaine. *Id*. They hired an attorney to represent them at a joint trial, and a

jury subsequently found them guilty. *Id*. at 180-181. On direct appeal, the Manrosses argued that they were denied the effective assistance of counsel because they were represented by the same attorney and that the trial court erred by failing to inquire into the possibility of a conflict of interest inherent in the attorney's joint representation. They argued further that an actual conflict existed in their case because Rose was charged with only one count while Russell was charged with multiple counts and because Rose testified and Russell did not. *Id*. at 181.

{¶ 10} The court of appeals reversed their convictions and held that when "the record does not demonstrate that the trial court advised appellants of the potential problems or prejudice" that might result from joint representation, it cannot be determined whether the decision to have joint representation was "both an informed and voluntary choice." *State v. Manross*, 11th Dist. Ashtabula No. 1295, 1987 WL 14175, *3 (July 10, 1987). We reversed the court of appeals and reinstated the judgment of the trial court. *Manross*, 40 Ohio St.3d at 183, 532 N.E.2d 735. We acknowledged that while the better practice would be for trial courts to advise each defendant of his or her right to separate representation, a trial court's failure to do so does not necessarily amount to error. *Id*. at 182. Unless the trial court knows or has reason to know of a potential conflict, the court does not have an affirmative duty to inquire about the attorney's joint representation of codefendants. *Id*. Further, if the trial court's affirmative duty to inquire did not arise, then the defendant must show that an actual conflict of interest adversely affected the representation. *Id*.

{¶ 11} In *Manross*, neither of the codefendants objected to the dual representation, and thus, it was their burden on appeal to demonstrate that an actual conflict existed and that the conflict adversely affected their lawyer's performance. *Id*. We found no actual conflict. The Manrosses' respective defenses did not result in one assigning blame to the other and they had a common interest in attacking the credibility of the state's witnesses. *Id*. at 182-183. Furthermore, the fact that Rose

was charged with a single count, while Russell was charged with nine counts, did not demonstrate an actual conflict of interest. *Id*. at 183.

{¶ 12} In *Gillard*, we again considered the issue of dual representation, this time finding that the trial court's affirmative duty to inquire into a possible conflict of interest did arise. 64 Ohio St.3d at 311-312, 595 N.E.2d 878. In that case, the same trial counsel represented two brothers, John and William Gillard, at a preliminary hearing in the municipal court. *Id*. at 306. Both men had been arrested in connection with the shooting deaths of two people and the attempted aggravated murder of a third person. *Id*. at 305-306. Following the preliminary hearing, the attempted-aggravated-murder and aggravated-murder charges against William were dismissed and, on advice of counsel, William pleaded no contest to a misdemeanor charge of discharging a firearm outside a residence. *Id*. at 306. John, however, was indicted on aggravated-murder charges with death-penalty specifications, and his case proceeded to trial with the same counsel who had represented both brothers at the preliminary hearing. *Id*. at 305-306.

{¶ 13} In the fifth week of John's trial, counsel called William, whose case had been dismissed by the municipal court, to testify as a defense witness. *Id*. at 307. The state then informed the trial court that a grand-jury investigation into William was ongoing and that a potential conflict of interest existed as a result of the prior dual representation of the brothers. *Id*. The trial court advised William of his Fifth Amendment right not to testify in light of the ongoing grand-jury investigation. *Id*. at 308. The trial court further stated that there may be conflicts related to the prior dual representation and appointed independent representation for William. However, the court made no inquiry into whether John had received and would continue to receive conflict-free representation. *Id*. at 308.

{¶ 14} William then testified that the charges against him had been dismissed after the preliminary hearing, while the charges against John had not been; he also testified that he had never had a gun on the day in question and had

8

not been involved with the shootings. *Id*. "On cross-examination, over defense counsel's objection, the state presented evidence placing William at the scene and implicating him as a participant in the shootings." *Id*. at 308. John was convicted, and the jury recommended the death penalty. *Id*. at 305.

{¶ 15} On review, we found that "the trial court knew (or at *least* should have known) that a possible conflict of interest existed," and thus, the trial court had an affirmative duty to inquire into the possible conflict to determine whether John "had received, and would receive, the right to conflict-free counsel guaranteed him by the Sixth Amendment to the United States Constitution." (Emphasis sic.) *Id*. at 311-312. We noted that the state had specifically brought the possible conflict of interest to the court's attention. *Id*. at 307. Moreover, the potential conflict was apparent in the record. *Id*. at 307-308. Having found that the trial court's affirmative duty to inquire had arisen, we were unable to determine whether there was an actual conflict of interest. *Id*. at 312. The trial court's limited inquiry and appointment of independent counsel for William was insufficient to satisfy its constitutionally required duty to inquire into whether John's right to conflict-free counsel was protected. *Id*. Thus, despite "overwhelming evidence" of John's guilt, we remanded the case to the trial court with instructions to conduct a hearing to determine whether an actual conflict of interest existed. *Id*.

{¶ 16} Against this backdrop, we turn to the facts of this case to first determine whether the trial court's affirmative duty to inquire into the possibility of a conflict related to the dual representation arose. We agree with the court of appeals that it did not. 2020-Ohio-3588 at ¶ 36. The transcript is clear that no possible conflict was brought to the trial court's attention. Further, there is nothing in the record to indicate that the trial court should have reasonably known of a possible conflict. Marshall was given opportunities to address the court and did not say anything that would have reasonably put the court on notice of a possible conflict created by the dual representation. *State v. Ingol*, 89 Ohio App.3d 45, 49,

623 N.E.2d 598 (9th Dist.1993) (absent an objection or circumstance showing the court should have reasonably known of a possible conflict, a trial court may assume no conflict exists or that the risk is known and accepted); *Haugabrook*, 2016-Ohio-5838, at ¶ 17, 21 (vacating appellant's guilty plea after finding that prior to pleading guilty, appellant had expressed reservations to the trial court with the dual representation of him and his wife, claiming that she was innocent and they were both subject to a package plea deal).

{¶ 17} Here, when the trial court asked Marshall whether he was satisfied with the representation he received, he replied that he was. And when the trial court asked if there was anything about his case or the proceedings that he did not understand, he said no. Unlike in *Gillard*, where trial testimony demonstrated the possibility of incompatible interests, there is nothing in the record before us indicating that the trial court should have been aware of the possibility of a conflict. Accordingly, we find that the trial court did not have an affirmative duty to inquire into a possible conflict with the dual representation of Marshall and his wife.

{¶ 18} Having found that the trial court had no affirmative duty to inquire into the possibility of a conflict of interest, we now examine whether an actual conflict existed—that is, whether Marshall's interests diverged from his wife's interests with respect to a material legal or factual issue. *Dillon*, 74 Ohio St.3d at 169, 657 N.E.2d 273. We find no indication that their interests diverged, and Marshall has not directed us to any instance in his case when his defense diverged from his wife's defense on a material legal or factual issue. *State v. Smith*, 3d Dist. Hancock No. 5-11-10, 2012-Ohio-5020, ¶ 29-31 (finding an actual conflict based on the divergence of interests where it appeared that one client's best interest was to seriously consider a plea in exchange for her testimony against her codefendant). When Marshall and his wife addressed the court at the sentencing hearing, his wife offered an apology for her poor decisions and expressed her intent to focus on her health and her family. Marshall took responsibility for his actions and explained

that drugs and the sale of drugs had ravaged his life and the lives of other family members for decades and that he was looking for a way out. He also explained that he had sold drugs because he was trying to raise money to pay for surgery that his wife needed. He requested that the court be as lenient as possible so that he could get home to his wife and his grandchildren and so that he could demonstrate to the court that he is a positive and productive citizen.

{¶ 19} The statements made by Marshall do not diverge from his wife's statements, and he did not assign blame to her or indicate that he was bearing criminal culpability that properly belonged to her. Marshall argues that his interests *could* have diverged from those of his wife, but absent a showing that the trial court had the affirmative duty to inquire, asserting the *possibility* of a conflict of interest is insufficient to establish "the constitutional predicate for [a] claim of ineffective assistance of counsel." *Manross*, 40 Ohio St.3d at 182, 532 N.E.2d 735. Further, the fact that his wife was charged with fewer offenses than Marshall was charged with does not establish an actual conflict, *id*. at 183; nor does the fact that she received a more advantageous plea offer, *State v. Ermekeil*, 8th Dist. Cuyahoga Nos. 63703 and 63704, 1993 WL 367082, *13 (Sept. 16, 1993).

{¶ 20} The rights Marshall is seeking to protect are his Sixth Amendment right to conflict-free counsel and his fundamental right to a fair trial. But there is no indication that either of those rights were violated in his case. Marshall argues that nothing in the record establishes that he knowingly waived any potential conflict or that counsel explained the potential conflict. Marshall stops short, however, of asserting that defense counsel actually failed to provide him with this explanation. Further, Marshall does not put forth an alternative defense or strategy that was not undertaken because of the dual representation. *See State v. West*, 2018-Ohio-640, 106 N.E.3d 96, ¶ 26 (12th Dist.) (finding that in order to demonstrate an actual conflict of interest, a defendant must put forth a viable alternative defense that was not undertaken due to the attorney's divided loyalties). We agree with the

court of appeals that the record in this case does not reveal a violation of Marshall's right to conflict-free representation. 2020-Ohio-3588 at ¶ 41. Furthermore, we find no violation of Marshall's fundamental right to a fair trial.

**{¶ 21}** Finally, Marshall asks us to hold that judicial inquiry into a potential conflict of interest is required whenever a trial court is aware that two or more criminal codefendants are being represented by the same attorney. He argues that this is a safer, more transparent, and more just rule. Further, Marshall asserts in his merit brief that judicial advisement into an attorney's potential conflict of interest in a case involving multiple representation is an "unmitigated good," because what the court loses in a small amount of time it will "regain tenfold in both the appearance and *fact* of fairness, transparency, and professionalism." (Emphasis sic.) Marshall also calls our attention to a number of jurisdictions that require judicial inquiry into multiple representation by rule.[4]

**{¶ 22}** As we observed in *Manross*, we agree that the better practice is for the trial court to make a prompt inquiry and advisement in cases involving joint representation of codefendants, even if such an inquiry and advisement is not constitutionally required. 40 Ohio St.3d at 182, 532 N.E.2d 735. We also recognize that defendants might not know of their right to separate counsel and that there could be instances in which lawyers may take advantage of this ignorance, in spite of their duty to provide effective assistance of counsel that is free from any conflict of interest. But requiring trial courts to promptly inquire about an attorney's potential conflict of interest whenever that attorney represents two or more criminal codefendants should be done by rule or by legislation.

---

4. Fed.R.Crim.P. 44(c)(2) provides, "The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation." *See also* W.Va.R.Crim.P. 44(c); Mich.Ct.R. 6.005(F); Ky.R.Crim.P. 8.30(1).

### III.  CONCLUSION

{¶ 23} There is nothing in the record of this case giving rise to an affirmative duty of the trial court to inquire about a potential conflict of interest resulting from the dual representation of Marshall and Shawnte Williams. Furthermore, the record does not reveal that any actual conflict of interest existed during trial counsel's representation of the couple.  Accordingly, we hold that when a trial court does not know, and should not reasonably have known, of a possible conflict of interest in an attorney's representation of two or more codefendants charged with a crime, the trial court has no affirmative duty to inquire whether a conflict of interest exists.  We affirm the judgment of the Eighth District Court of Appeals.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, and DONNELLY, JJ., concur.

BRUNNER, J., dissents, with an opinion.

_____

**BRUNNER, J., dissenting.**

{¶ 24} The right to counsel is not protected solely by the Sixth Amendment to the United States Constitution.  Article I, Section 10 of the Ohio Constitution also guarantees the right to counsel, providing that "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel." The majority decides this case solely on the Sixth Amendment, making no mention of Article I, Section 10 of the Ohio Constitution, even though defendant-appellant, Marshall Williams, made clear that he sought to invoke that right in his briefs to the court of appeals and to this court.

{¶ 25} I believe that the majority opinion's analysis is incomplete.  I would address the right to counsel in Article I, Section 10 of the Ohio Constitution and hold that it requires a trial court to make a prompt inquiry into whether a conflict

exists any time two or more defendants facing charges arising out of the same matter are represented by the same attorney. Because the trial court in this matter did not conduct such an inquiry, I would remand this matter to the trial court for it to determine whether an actual conflict existed. Further, because the majority opinion indicates that inquiries into multiple representation should be addressed by a rule or a statute, I note several specific matters any such rule or statute must address to sufficiently protect the right to counsel.

### *Article I, Section 10 of the Ohio Constitution*

{¶ 26} The Sixth Amendment body of law relied on by the majority opinion has been well established for over 40 years. The Sixth Amendment guarantees a criminal defendant the right "to have the Assistance of Counsel for his defence," which includes the right to counsel free from conflicts arising from counsel's representation of multiple individuals in the same matter, *Holloway v. Arkansas*, 435 U.S. 475, 489-490, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). That right, however, requires a trial court to initiate an inquiry into the propriety of multiple representation only when the court "knows or reasonably should know that a particular conflict exists." *Cuyler v. Sullivan*, 446 U.S. 335, 346-347, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). If the trial court did not know and should not reasonably have known that a conflict existed, then "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance" in order to establish a Sixth Amendment violation. *Id.* at 347-348.

{¶ 27} Between the late 1980s and the mid-1990s, this court applied *Holloway* and *Cuyler* on several occasions. *See State v. Manross*, 40 Ohio St.3d 180, 181-183, 532 N.E.2d 735 (1988) (holding that the defendants did not show that an actual conflict existed); *State v. Gillard*, 64 Ohio St.3d 304, 306-312, 595 N.E.2d 878 (1992) (holding that the trial court knew or should have known that a potential conflict existed based on the facts of the case and remanding for an inquiry

into whether an actual conflict that adversely affected counsel's performance existed); *State v. Dillon*, 74 Ohio St.3d 166, 167-170, 657 N.E.2d 273 (1995) (holding that the facts of the case established that the trial court had no duty to inquire into the possibility of a conflict and that an actual conflict did not exist). Those three cases represent this court's primary decisions applying the Sixth Amendment right to counsel in the context of multiple representation. The appellate court in this case applied that well-established law, and today, the majority opinion does little more than simply affirm.

{¶ 28} Our law caselaw applying Article I, Section 10, however, is sparse. We have held that the provision is "comparable to but independent of similar guarantees provided by the Sixth Amendment to the United States Constitution." *State v. Milligan*, 40 Ohio St.3d 341, 533 N.E.2d 724 (1988), paragraph one of the syllabus. The similarity between the two provisions perhaps stems from the fact that both provide fundamental rights. On this point, the United States Supreme Court's discussion of the Sixth Amendment right to counsel also describes Article I, Section 10 well:

> [The right to counsel] embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly, and necessary to the lawyer—to the untrained layman—may appear intricate, complex, and mysterious. * * *
>
> * * * "Even the intelligent and educated layman has small and sometimes no skill in the science of law. * * * He is unfamiliar with the rules of evidence. Left without the aid of counsel he may

be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defence, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him." The Sixth Amendment withholds from federal courts, in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel.

*Johnson v. Zerbst*, 304 U.S. 458, 462-463, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), quoting *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

{¶ 29} A second similarity between the right to counsel under Article I, Section 10 and the comparable right under the Sixth Amendment is that they both include the right to effective counsel free from conflicts, including conflicts arising from multiple representation. The right to counsel under Article I, Section 10 would mean little in this context if "the advocate's conflicting obligations have effectively sealed his lips on crucial matters," *Holloway*, 435 U.S. at 490, 98 S.Ct. 1173, 55 L.Ed.2d 426. Finally, a third similarity between the two guarantees is the important role of the trial court in protecting the right to counsel: " 'Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused. * * * The trial court should protect the right of an accused to have the assistance of counsel.' " (Ellipsis added in *Holloway*.) *Id.* at 484, quoting *Glasser v. United States*, 315 U.S. 60, 71, 62 S.Ct. 457, 86 L.Ed. 680 (1942), *superseded by rule on other grounds*, *Bourjaily v. United States*, 483 U.S. 171, 181, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

{¶ 30} When considering how Article I, Section 10 may differ from the Sixth Amendment, we have stated that we look for "compelling reasons why Ohio

constitutional law should differ from the federal law on [the] issue." *State v. Wogenstahl*, 75 Ohio St.3d 344, 363, 662 N.E.2d 311 (1996). And we have found that the right to counsel under the Ohio Constitution is broader than its federal counterpart in at least one case. *See State v. Bode*, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, ¶ 23-27 (holding that the right to counsel in the Ohio Constitution provides greater protection than the right to counsel protected by the Due Process Clause of the Fourteenth Amendment with respect to certain juvenile delinquency adjudications). In my view, Williams has identified compelling reasons why the right to counsel under Article I, Section 10 provides greater protection than the Sixth Amendment in this case. Thus, I would hold that Article I, Section 10 requires a trial court to inquire into the propriety of multiple representation when an attorney represents two or more individuals charged with related crimes.

{¶ 31} We have previously acknowledged that the trial court plays an important role in a defendant's waiver of the right to counsel. "In order to establish an effective waiver of [the] right to counsel, the trial court must make sufficient inquiry to determine whether [the] defendant fully understands and intelligently relinquishes that right." *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph two of the syllabus. A defendant's decision to accept multiple representation must also be knowing and intelligent. *See Cuyler*, 446 U.S. at 351, 100 S.Ct. 1708, 64 L.Ed.2d 333 (Brennan, J., concurring in part and in the result). The trial court, "therefore, must play a positive role in ensuring that the choice was made intelligently." *Id.*

{¶ 32} One reason for this is that although multiple representation can be beneficial to each defendant involved, *see Glasser*, 315 U.S. at 92, 62 S.Ct. 457, 86 L.Ed. 680 (Frankfurter, J., dissenting) ("A common defense often gives strength against a common attack"), it can also lead to conflicts of interest that undermine the right to counsel and the administration of justice more generally. As the United

States Supreme Court has acknowledged, "[j]oint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing." *Holloway*, 435 U.S. at 489-490, 98 S.Ct. 1173, 55 L.Ed.2d 426. For example, it can prevent an attorney from fully exploring the possibility that one client might enter into a plea agreement requiring him to testify against the attorney's other client in exchange for the opportunity to plead guilty to a lesser offense. *Id.* at 490. Multiple representation "may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another." *Id.* Given this, when a defendant accepts an attorney's representation that involves multiple clients in related matters, the trial court must take these dangers into account if it is to fulfill its duty to conduct the trial " 'with solicitude for the essential rights of the accused,' " *Cuyler* at 351 (Brennan, J., concurring in part and in the result), quoting *Glasser* at 71.

{¶ 33} The state argues that the protection of Article I, Section 10 is equal to the protection of the Sixth Amendment on this point and that an inquiry is only required when the court knows or should reasonably know of a potential conflict or if the defendant objects to multiple representation. But that would require a trial court to inquire into the propriety of multiple representation only when the potential for a conflict is apparent from the record. Placing such heavy reliance on concerns apparent from the record is counterintuitive in the face of multiple representation since that very status often *prevents* an attorney from making that record, depending on the interests of their multiple clients. *See Holloway* at 489-490. Declining to recommend that one client pursue a plea agreement because it would require testimony against another client, is hardly something that would be preserved in the record. *See id*. at 490; *see also Cuyler* at 358 (Marshall, J., concurring in part and

dissenting in part) ("in many cases the effects of the conflict on the attorney's performance will not be discernible from the record").

{¶ 34} Nor is it sufficient to rely on the attorney engaged in multiple representation to notify the court of a potential conflict. "[E]ven the most diligent attorney may be unaware of facts giving rise to a potential conflict." Fed.R.Crim.P. 44, Advisory Committee Notes to 1979 Amendment. "Often 'counsel must operate somewhat in the dark and feel their way uncertainly to an understanding of what their clients may be called upon to meet upon a trial' and consequently 'are frequently unable to foresee developments which may require changes in strategy.' " *Id.*, quoting *United States v. Carrigan*, 543 F.2d 1053, 1058 (2d Cir.1976) (Lumbard, J., concurring).

{¶ 35} We likewise should not ignore the potential that, for one reason or another, an attorney may not correctly assess his or her ability to fully represent the interests of multiple clients simultaneously. *See Cuyler*, 446 U.S. at 351, 100 S.Ct. 1708, 64 L.Ed.2d 333 (Brennan, J., concurring in part and concurring in the result) ("[T]he Constitution also protects defendants whose attorneys fail to consider, or choose to ignore potential conflict problems"). In *Gillard*, for example, when the prosecution informed the court of a potential conflict arising from the defense attorney's representation of the defendant and of his brother, who was still under investigation for related offenses, the defendant's attorney insisted that he could fairly represent both. *See Gillard*, 64 Ohio St.3d at 307-308, 595 N.E.2d 878. We observed that the trial court had correctly rejected the defense attorney's optimism when it appointed a new attorney to represent the defendant's brother; however, we held that the court erred when it failed to inquire into whether the attorney's continued representation of the defendant was permissible, finding that "there [was] a clear possibility of [a] conflict of interest on the facts of [the] case." *Id.* at 308, 311-312.

{¶ 36} Similarly, in *Cuyler*, the conflict was established only in a postconviction hearing, at which one of the defendant's attorneys candidly admitted that he had wanted the defendant not to present any evidence after the prosecution rested its case because doing so would have exposed witnesses he planned to present in defense of two other clients in their upcoming trials on related offenses. *Cuyler* at 338. But that sort of admission is unusual. One would normally "expect the attorney to be unwilling to give such supportive testimony, thereby impugning his professional efforts." *Id.* at 358 (Marshall, J., concurring in part and dissenting in part).

{¶ 37} We also cannot ignore that multiple representation may result in greater compensation for an attorney. Unfortunately, that financial incentive may influence counsel's judgment of his or her ability to represent the interests of both clients simultaneously.

{¶ 38} Together, these concerns envisage the fair conclusion that Article I, Section 10 requires a trial court to inquire into the propriety of multiple representation in any case in which two or more defendants charged with crimes arising out of the same matter are represented by the same attorney. *See Colon v. Fogg*, 603 F.2d 403, 407 (2d Cir.1979) ("Such an inquiry is usually the only practical method of ascertaining whether the joint representation may prejudice the defendant and, if so, whether he nevertheless desires to make an informed waiver of his right to independent representation"). I would therefore hold that such an inquiry was required in this case. I would also hold that because an inquiry was not conducted in this case, the appropriate remedy is to remand the case to the trial court to determine whether an actual conflict existed.

***Principles to consider in a rule or statute concerning multiple representation***

{¶ 39} Because the majority does not address the right to counsel under Article I, Section 10 of the Ohio Constitution, it remains an open question in future cases whether that provision requires a trial court to inquire into the propriety of

multiple representation any time an attorney represents two or more individuals charged with related crimes. Instead, the majority concludes that "requiring trial courts to promptly inquire about an attorney's potential conflict of interest whenever that attorney represents two or more criminal codefendants should be done by rule or by legislation." Majority opinion at ¶ 22. That being the case, I suggest that there are several key points that any such rule or legislation should address.

{¶ 40} The text of Fed.R.Crim.P. 44 is a good starting point. It delineates the court's responsibilities as follows:

> **(c) Inquiry Into Joint Representation.**
>
> **(1)** *Joint Representation.* Joint representation occurs when:
>
> (A) two or more defendants have been charged jointly under Rule 8(b) or have been joined for trial under Rule 13; and
>
> (B) the defendants are represented by the same counsel, or counsel who are associated in law practice.
>
> **(2)** *Court's Responsibilities in Cases of Joint Representation.*
>
> The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

(Boldface and italics sic.) Fed.R.Crim.P. 44(c). Notably, a general advisement given to a group of defendants would not suffice under this rule. The requirement that the trial court take "appropriate measures" *except* where there is "good cause

to believe that no conflict of interest is likely to arise" also ensures that the inquiry and advisement is not a mere formality. Because every case is different, the court should specifically consider what "additional measures" may be appropriate in each case.

{¶ 41} Any rule or statute concerning the dangers of multiple representation should also address several other matters. For example, the inquiry and advisement by the trial court should be placed on the record. *See, e.g.*, Mich.Ct.R. 6.005(F)(1) through (3) (requiring statements on the record from the attorney(s) engaged in multiple representation and the defendants and findings on the record by the court "that joint representation in all probability will not cause a conflict of interest"). Without a record of what was said, an appellate court will be unable to conduct a meaningful review. The inquiry and advisement should also be conducted outside the presence of a jury, and "[w]henever it is necessary to make a more particularized inquiry into the nature of the contemplated defense, the court should 'pursue the inquiry with defendants and their counsel on the record but in chambers' so as 'to avoid the possibility of prejudicial disclosures to the prosecution.' " Fed.R.Crim.P. 44, Advisory Committee Notes to 1979 Amendment, quoting *United States v. Foster*, 469 F.2d 1, 5 (1st Cir.1972).

{¶ 42} A rule or statute should also make clear that the obligation of the court to ensure that multiple representation does not result in a conflict of interest is continuing. This is important because some conflicts may not clearly arise until later in the case. *See Cuyler*, 446 U.S. at 354, 100 S.Ct. 1708, 64 L.Ed.2d, fn. 1 (Marshall, J., concurring in part and dissenting in part) (observing that when an inquiry occurs at an early stage of the case, "not all possible conflicts might be anticipated"); *Fryar v. United States*, 404 F.2d 1071, 1073 (10th Cir.1968) ("able counsel [cannot] anticipate with complete accuracy the course that a criminal trial may take" with respect to potential conflicts or prejudice from joint representation). When new developments indicate a new or increased potential for a conflict, the

court must therefore inquire and advise again. *See, e.g.*, Mich.Ct.R. 6.005(G) (requiring courts to inquire into "any potential conflict that becomes apparent" "at any time, including trial," and to "take such action as the interests of justice require"); *see also* Fed.R.Crim.P. 44, Advisory Committee Notes to 1979 Amendment ("The obligation placed upon the court by rule 44(c) is a continuing one, and thus in a particular case further inquiry may be necessary on a later occasion because of new developments suggesting a potential conflict of interest").

{¶ 43} Finally, when a defendant seeks to waive the right to separate counsel free from conflicts, the waiver must be provided after any potential conflict has been clearly identified and explained on the record. *See, e.g.*, Ky.R.Crim.P. 8.30(1) (requiring a defendant seeking to waive the right to separate representation to "execute[] and cause[] to be entered in the record a statement that the possibility of a conflict of interests on the part of the attorney has been explained to the defendant by the court and that the defendant nevertheless desires to be represented by the same attorney"). The waiver should be provided in " 'clear, unequivocal, and unambiguous language.' " *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir.1975), quoting *Natl. Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 332, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964) (Black, J., dissenting).

{¶ 44} Not only would requiring an inquiry into the propriety of multiple representation in all cases provide greater protection of the right to counsel, it would also have a positive effect on the cost of administering justice. The small investment that is required for a trial court to conduct an inquiry is far outweighed by the time and resources that are preserved by way of obviating the need for (1) trial continuances for related defendants who would need new counsel and then new counsel's need to become familiar with the case and the evidence, (2) the appellate review of alleged conflicts and conflict allegations, and (3) postconviction proceedings concerning new evidence of a conflict. *See United States v. Mari*, 526 F.2d 117, 121 (2d Cir.1975) (Oakes, J., concurring) (discussing post-trial

proceedings that can be avoided when a trial court inquires into the potential for a conflict due to multiple representation). These savings would similarly serve the government's interests. *See Garcia* at 278 ("Recordation of the waiver colloquy between defendant and judge will also serve the government's interest by assisting in shielding any potential conviction from collateral attack, either on Sixth Amendment grounds or on a Fifth or Fourteenth Amendment 'fundamental fairness' basis"). I suggest that any rule or statute concerning the responsibilities of courts and counsel in multiple-representation situations encompass these matters.

### *Conclusion*

**{¶ 45}** For these reasons, I respectfully dissent.

_____

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Frank Romeo Zeleznikar, Assistant Prosecuting Attorney, for appellee.

Mark A. Stanton, Cuyahoga County Public Defender, and Robert B. McCaleb, Assistant Public Defender, for appellant.

_____